## Citizens National Life Insurance Company v. Egner, Executor, et al.

(Decided December 17, 1915.)

### Appeal from McCracken Circuit Court.

1. Insurance—Cancellation of Policy—Waiver of Right to Cancel.— To constitute a waiver of a right to cancel a life insurance policy after the death of the insured, there must be a distinct recognition, by acts or declarations, of the validity of the policy, or of an intention to abandon or not to insist upon the forfeiture.

2. Insurance—Cancellation of Policy—Waiver of Right to Cancel.— Where a life insurance company accepted the premium upon the policy after it was due, but before the death of the insured, and retained the premium and made no effort to return it, or to cancel the policy for non-payment of the premium, or other cause, it waived its right to cancel the policy, and is estopped from relying upon the forfeiture clause of the policy, in an action to enforce it.

WHEELER & HUGHES for appellant.

BERRY & GRASSHAM for appellee.

OPINION OF THE COURT BY CHIEF JUSTICE MILLER— Affirming.

By its policy dated November 17th, 1913, the appellant insured the life of James M. Egner, of Paducah, in the sum of $1,000.00, payable to Mary A. Egner, his wife, upon the death of the insured.

The policy called for a monthly premium of $1.42, payable upon the 17th day of each month, with thirty days' grace. The premiums due on November 17th, and

December 17th, 1913, were paid, when due; but the premium due on January 17th, 1914, was not paid when due, or within thirty days thereafter, but was paid under the following circumstances:

On Monday, February 16th, 1914, Carl Hank, the collector for the company, called on Mrs. Egner, at her home, for the purpose of collecting the premium which had been due since January 17th. Hank told Mrs. Egner that the policy would lapse if the premium was not paid by the next day, which would be the 17th of February. She answered him by saying that she did not have the money, but that she would try to get it; and that Mr. Egner, the insured, was sick and in the city hospital. Upon Mrs. Egner's saying that she would try to get the money, Hank told her he would wait upon her and postpone the collection until the next Monday, which would be the 23rd of February. Mrs. Bettis, a neighbor, was present during this conversation, and testified concerning it, as above stated.

On Wednesday, the 18th, Hank and Ezell, the local superintendent at Paducah, went to Anchorage, Ky., the home office of the company, and did not return to Paducah until the night of Saturday, the 21st. In the meantime, Mrs. Egner procured $2.84 and gave it to Mrs. Bettis on Friday, February 20th, with a request that she deliver it to the company in payment of the two monthly premiums that were due January 17th and February 17th, respectively. Mrs. Bettis, in turn, handed the money to Lewis, with a request that he take it to the office; but, instead of taking it to the office, Lewis turned the money over to Boyd, who was in the service of the company, and with whom Lewis was acquainted. Before accepting the money, however, Boyd telephoned to Orr, another agent, at the company's office, and inquired of Orr if he should receive the money. Orr replied by directing Boyd to receive the money and give his personal receipt for it, saying that the company's receipt would be forwarded later. Boyd gave his personal receipt for the $2.84, and on the morning of the next day, which was Saturday, February 21st, Boyd paid the money to Miss Weatherford, the clerk in charge of the office, and she gave him the company's receipts, which were returned to Mrs. Egner.

James M. Egner, the insured, died on the next day— Sunday, February 22nd.

This action was begun by Mary A. Egner, the widow; but, she having died before the trial, it was revived in the name of her administrator, Peter Egner, who is the appellee here.

By its answer, the company relied upon a provision of the policy which provided that only its president or secretary had authority to bind the company to an agreement to extend the time for paying any premium; that Hank had no authority to extend the time for the payment of the premium; and, further, that neither the insured, the beneficiary, nor any one else notified the company of James Egner's serious illness at any time before his death; that Egner, and those representing him, purposely concealed the fact of his illness for the purpose of deceiving and inducing the company to receive the premiums and to receipt therefor; and that it would not have received said premium had it known of the illness of James Egner. And, the answer further alleged that Miss Weatherford had no authority to receive the money, or to receipt therefor.

The reply traverses the allegations of the answer; and, after setting forth the facts relating to the absence of Ezell and Hank from Paducah from Wednesday until Saturday night, and the other facts connected with the payment of the premiums as above related, it alleges that the company accepted and receipted for the premiums, and still retains them, and that it never actually canceled the contract, or offered to rescind it, or to return the premiums so received.

Upon the strength of these facts, plaintiff contends that the company waived its right to cancel the policy, and was estopped to plead or rely upon a forfeiture of the policy.

Upon a trial by the judge without a jury, a judgment was entered for the plaintiff. The company appeals.

Hank admitted that Mrs. Egner told him during his visit to her on February 16th, that Mr. Egner was sick, and also that she was sick and did not have the money to pay the premium; he denies, however, that he told her he would postpone the payment of the premium for a week, or for any time.

There is no dispute, however, as to the facts concerning the payment of the premiums and the retention of them by the company; the company, in this respect, only

questions the authority of Miss Weatherford to receive the money, and the legal effect of her act in accepting it, after February 17th.

Under this state of facts, we do not feel called upon to discuss the legal question raised in the appellants' brief, to the effect that the acts of Hank and Miss Weatherford were not binding upon the company, or the further question that the premiums were paid to the company without giving it the information concerning Egner's illness, since it is uncontradicted that the company still retains the premiums, after it has had full knowledge of the facts upon which it relies to defeat the policy. It is now estopped to say that it was misled, or that the premium is unpaid.

But Ezell admitted in his testimony that Miss Weatherford had authority to receive premiums during his absence. It results, therefore, from the proof, that the company had notice of Egner's illness, through Hank, and that the premiums were received by the company, through its accredited employe, Miss Weatherford.

It is a well settled rule that where the insurer, having knowledge of the facts to which he has a right to take exceptions, or which would constitute a defense against any claim under the policy if he choose to avail himself of them, so bears himself thereafter in relation to the contract as fairly to lead the insured or the beneficiary to believe that the company still recognizes the policy to be in force, he will be estopped from afterwards denying that it is in force. Or, as was said in Mutual Protective League v. Walker, 163 Ky., 353, "to constitute a waiver after loss there must be a distinct recognition, by acts or declarations, of the validity of the policy, or an intention to abandon or not to insist on the forfeiture." The last named character of waiver exists here.

See also May on Insurance, volume 2, section 507.

In the case at bar, the company by receiving and retaining the premiums without objection, and without canceling the policy, or giving the beneficiary during his lifetime, or even any one thereafter, any notice or intimation that it would disavow its act of receiving the premium, will not be permitted to say that the premium was not paid or that the policy was forfeited for the non-payment of the premium.

We do not rest the decision of this case upon the disputed question of Hank's authority to extend the time of payment, but upon the company's retaining the premium, and its failure to cancel the policy after it had full knowledge of all the facts it now presents as a defense.

The circuit court took that view of the case; and, in doing so we think it was fully sustained by the law and the facts.

Judgment affirmed.