## Equitable Life Assurance Society of New York v. Brewer.

(Decided June 12, 1928.)

### Appeal from Christian Circuit Court.

1. Insurance.—In suit on life policy, defended on ground that policy lapsed for nonpayment of premium in time, presumption arising from mailing by insurer, after receiving premium, of letter, properly addressed and stamped, requiring insured to sign certificate of good health as condition for reinstatement, is rebutted by proof that insured was confined by illness, and could not and did not receive letter.

2. Insurance.—In suit to recover on life policy, defended on ground that policy lapsed for nonpayment of premium within time, evidence failing to show letter mailed by insurer, requiring certificate of health as condition for reinstatement on payment of premium, was properly addressed or stamped, or that return address of insurer was on envelope, failed to show that conditions of letter

were communicated to or accepted by insured, whose premium check sent after due, was cashed by insurer.

3. Insurance.—When payment of premium is tendered after period of grace has expired, insurer need not accept it, but, when insurer accepts payment, it must bring home to insured any conditions it desires to impose, since insurer cannot accept money of insured, retain and use it, and at same time deny payment was made, and repudiate liability under policy.

4. Insurance.—Insurer, desiring to impose conditions for reinstatement of policy lapsing for nonpayment of premiums, should wait to accept money until conditions are communicated to insured and complied with by him and if it accepts money in anticipation of insured signing health certificate, insurer assumes risk of liability accruing before notice of conditions to insured.

5. Insurance.—Receipt of payment for past-due premium, unaccompanied by health certificate required by insurer for reinstatement, constituted an unconditional tender of premium until conditions were assented to by insured or until he was advised of them and given opportunity to accept or reject conditions.

6. Contracts.—Person cannot be bound by uncommunicated terms or conditions without his consent.

7. Tender.—Acceptance of payment tendered unconditionally binds person by payment as tendered until conditions, if any, sought to be imposed, are assented to by the other interested party.

8. Tender.—Assent to conditions sought to be imposed on acceptance of payment tendered unconditionally may be inferred, as any other relevant fact, from silence of party making tender after learning of conditions, when it became his duty to act.

9. Insurance.—Agent with authority to collect premiums on insurance policy has authority to bind company in accepting payment of premiums on policy which had lapsed for nonpayment.

10. Insurance.—Where premium was tendered unconditionally by insured on policy that had lapsed for nonpayment of premium, insurer, accepting premium without inquiry as to insured's health, could not defeat liability on policy, even though it were shown that insured was seriously sick at time of tender.

11. Insurance.—Under policy providing for reinstatement of lapsed policy, on production of evidence of insurability satisfactory to insurer and payment of overdue premiums, premium payment, tendered after expiration of period of grace, and retained by insurer on condition that insured sign certificate of good health, was binding on company, where condition annexed to acceptance was not communicated to insured or expressly or impliedly assented to.

WILLIAM MARSHALL BULLITT, LEO T. WOOLFORD and BRUCE & BULLITT for appellant.

S. Y. TRIMBLE for appellee.

OPINION OF THE COURT BY JUDGE WILLIS—Affirming.

The Equitable Life Assurance Society of New York insured Jack Brewer in the sum of $2,000, payable, in the event of the death of the insured, to his mother, Albertine Brewer. Jack Brewer died on January 12, 1926, and the beneficiary instituted this action to recover the full amount of the insurance. The policy contained a provision to the effect that failure to pay any premium on the date it was due, or within 31 days thereafter, lapsed the contract. The society defended on the ground that the policy lapsed on December 22, 1925, for nonpayment of the quarterly premium due November 21, 1925, and was not reinstated. The beneficiary denied the defense, and averred that the belated premium was paid and accepted. The circuit court rendered a judgment for the plaintiff for the amount claimed, and the society has prosecuted this appeal.

The facts material to the decision of the case are not in dispute. Brewer did not pay the premium due on November 21, 1925, within the period of grace allowed by the contract, but on December 30, 1925, tendered a check in payment of that premium. The check was received on December 31, 1925, duly indorsed by the cashier of the society in its name, and deposited to its credit in the bank. The check was paid and the society used the money, and, indeed, is still using it. The cashier testified that, when he received the check and deposited it he mailed to the insured an "escrow receipt," which provided that the society was holding the money subject to certain conditions. He also testified that he wrote a letter to the insured, advising him that the check had been received, but, as the grace period had expired, it was a necessary condition to reinstatement of the contract that the society be assured of his good health. A form of certificate of good health was inclosed for his signature, in order that reinstatement might be made. It is not shown that this letter was delivered, or the contents thereof communicated, to the insured. Brewer became ill on or about December 30th, and on that date the doctor says he was delirious and remained in the hospital until his death.

If it be assumed from the testimony of the cashier that he mailed the letter with the inclosures to Brewer, there is still no proof that Brewer received it. Any presumption arising from the mailing of the letter, properly

addressed and stamped, is rebutted by the uncontradicted proof that Brewer was confined by illness, and could not and did not receive the documents. It is not proven, however, that the letter was mailed to Brewer's address, or properly stamped, or that the return address of the sender was on the envelope. The cashier further testified that he wrote the insured a letter on February 3, advising him that the declaration of health was necessary in order that restoration of the policy might be submitted, and, not being received, a check payable to his order for the last premium was inclosed. The letter was apparently received by the appellee as it is referred to in a letter of an attorney, who wrote the insurance society on behalf of the beneficiary, requesting blanks for proof of claim, stating that the assured had died in January. It is not shown that this letter was delivered, or the contents thereof communicated, to the insured.

The ultimate question involved is whether a premium payment, tendered after expiration of the grace period and retained by the insurance company on conditions, is binding on the company, when the conditions annexed to the acceptance are not communicated to the assured, or assented to by him, either expressly or impliedly. The provision of the contract regarding reinstatement of a lapsed policy, even if notice thereof be chargeable to the insured, did not contain the conditions, but merely provided that, if the policy should lapse for nonpayment of premium, it could be reinstated upon production of evidence of insurability satisfactory to the society and the payment of all overdue premiums. When the payment of the premium was tendered after the grace period had expired, the company was not required to accept it; but, when the company did accept it, it was incumbent on it to bring home to the insured any conditions it desired to impose. The company could not take the money of the assured as a payment of the premium, retain and use it, and at the same time deny that payment was made. Citizens' National Ins. Co. v. Egner, 167 Ky. 478, 180 S. W. 778.

The company could not receive and retain the premium, and repudiate liability under the policy. It should wait to accept the money until its conditions were communicated to the assured and complied with by him. If it accepted the money in anticipation of the health certificate, it took the risk of liability accruing before notice of the desired conditions was brought home to the as-

sured. When the company received the money unaccompanied by a health certificate, it constituted an unconditional tender of the premium. The company might have held the check pending performance of the conditions, and no liability could have arisen; but acceptance of the money did not carry with it the conditions, until those conditions were assented to by the assured, or until he was advised of them and given an opportunity to accept or reject them. It is clear in this case that the conditions were not communicated to or accepted by the assured. Indeed, it is not so claimed. The case of Shea v. Massachusetts Benefit Association, 160 Mass. 289, 35 N. E. 855, 39 Am. St. Rep. 475, deals with a simliar question on facts resembling those here appearing, and the court said:

"It was not in dispute that the defendant received and kept the money sent for this call; and, ordinarily, an acceptance of the money, though it was paid after the expiration of the time fixed, implies a waiver of objection growing out of the delay. Hodsdon v. Guardian Life Ins. Co., 97 Mass. 144 93 Am. Dec. 73; Insurance Co. v. Wolff, 95 U. S. 326 (24 L. Ed. 387); Phoenix Life Ins. Co. v. Raddin, 120 U. S. 183, 196 (7 S. Ct. 500, 30 L. Ed. 644); Wing v. Harvey, 5 De Gex, M. & G. 265, 270. The money was tendered unconditionally; and, if the company should retain it without objection, it would be held to assent to the terms of the payor. One who receives and retains money, which is sent to him to be kept on certain terms, must be deemed to assent to those terms, if he keeps the money, unless he makes it known to the sender that he will only keep the money on some other and different terms; and, if he seeks to establish different terms while keeping the money, it rests upon him to make that fact known. If the defendant would establish different terms from those upon which the money was sent, it must do something to make it known that its acceptance and retention of the money were conditional. It could not impose a condition binding upon Shea merely by determining in its own mind to do so. A secret vote of the directors that they would keep the money, but that the payment should be deemed valid only in case Shea was then in good health, would be of no avail. An uncommunicated condition is no condition. The company must certainly take some step to inform

Shea, or his agents, that the money, though retained, would not be held upon the terms upon which it was sent. This duty arose from its actual retention of the money, which was sent on specified terms. To keep the money and insist on different uncommunicated terms would savor of fraud. Good faith required that the defendant should not remain passive, but should do something, if it objected to the payments being considered unconditional. But then how much was it incumbent on the defendant to do? Must it be held to bring notice home to Shea, or his agents, or was it duly satisfied by merely posting its communication in the mail? There is nothing in the policy, or in the rules of the company annexed thereto, or in the by-laws, providing that such an effect shall be given to mailing a communication of this character. No fact is stated from which a request can be implied or inferred from Shea that the company should communicate such a condition in that way. In the absence of any stipulation in the contract between the parties, or in the rules of the company, or of any express or implied request on the part of Shea, or his agents, or those acting for him, we are acquainted with no rule of law under which he can be held to be bound by the defendant's act imposing a condition upon its acceptance and retention of the money, unless notice of such condition is actually brought home to him, or to those acting for him.''

The same question was considered by the Supreme Court of Iowa in the case of McDonald v. Equitable Life Assurance Society, 185 Iowa, 1008, 169 N. W. 352. The policy in that case was issued by the present appellant, and the case is in all material respects similar to the one before us. The ''escrow receipt'' issued in that case was on the same form involved in this one. The court said that the society, when the money was tendered, rightfully could have refused to accept or retain the money, but it did not exercise its option in that respect. It took the money, and, while the cashier says it was not accepted as a payment, but was to be held conditionally, to be finally accepted, if the insured should satisfy the company's demand for a health certificate, yet the payment had not been tendered or made for any such purposes. The condition was one imposed, or sought to be imposed, by the

company, without any agreement or consent of the insured, either express or implied. The court said:

> "The rule of law, as well as of reason, required the company, if it proposed to assert a forfeiture of the insurance, to return the money at once to McKee, stating the reason for the refusal to accept. Receipt and retention by the insurer of an overdue premium is universally held to operate as a waiver of forfeiture for the failure to make such payment on time, and the waiver will be effectual here, unless this result is to be avoided by the defendant's evidence that it accepted the money only on the conditions named."

As the evidence was conflicting, the court directed the question to be submitted to a jury, but the jury was to be instructed in accordance with the legal principle we have enunciated. Cf. Rockwell v. Mutual Life Ins. Co., 20 Wis. 335; New York L. Insurance Co. v. Eggleston, 96 U. S. 572, 24 L. Ed. 841; McQuillan v. Mutual Reserve Fund Life Ass'n, 112 Wis. 665, 87 N. W. 1069, 88 N. W. 925, 56 L. R. A. 233, 88 Am. St. Rep. 986.

In the case of Gould v. Equitable Life Assurance Soc., 231 N. Y. 208, 131 N. E. 892, relied upon by the appellant, the insured had been notified of the conditions on which the money would be accepted as payment. The fact that the insured was notified of the conditions under which the money was being held, and did not dissent, distinguishes that case from the others on the subject, and renders it consistent with the current of authority. In the case of Fidelity Mutual Life Ins. Co. v. Price, 117 Ky. 25, 77 S. W. 384, 25 Ky. Law Rep. 1148, the demand for payment of the premium note after maturity was not unconditional, but was accompanied by a request that insured sign a certificate of health. Cf. Intersouthern Life Ins. Co. v. Duff, 184 Ky. 227, 211 S. W. 738. In the case of Crook v. New York Life Ins. Co., 112 Md. 268, 75 A. 388, the insured was notified of the conditions under which the money was held, and of the fact that the policy would not be reinstated until the health certificate was furnished.

We apprehend that the authorities are in accord on this subject and we are convinced that the principle upon which they rest is sound. It comports with fundamental notions of justice, which prevents any person from being bound by uncommunicated terms or conditions without

his consent. It imposes no hardship, as the rule of law may be readily observed, and, if one accepts a payment tendered unconditionally, he will be bound by it as tendered, until the conditions, if any, which he seeks to impose, are assented to by the other interested party. Such assent may be inferred, as any other relevant fact, from the silence of the other party after learning of the conditions, when it becomes his duty to act.

It is further argued that the cashier had no authority to bind the company after the policy had lapsed for nonpayment of the premium due. The policy contained a provision that agents were not authorized to reinstate the policy, or to extend the time of payment of any premium or instalment thereof; but it is the general rule, fully supported by our decisions, that an agent with authority to collect premiums has authority to bind the company in the matter here involved. In Continental Ins. Co. v. Turner, 222 Ky. 608, 1 S. W. (2d) 1063, this court reviewed the relevant authorities, announced the rule prevailing almost universally, and restated the law of this state upon the question. Cf. Union Mut. Life Insurance Co. v. Wilkinson, 13 Wall. 222, 20 L. Ed. 617; Johnson v. Aetna Insurance Co., 123 Ga. 404, 51 S. E. 339, 107 Am. St. Rep 92; Viele v. Germania Ins. Co., 26 Iowa, 9, 96 Am. Dec. 83; Lamberfton v. Connecticut F. Ins. Co., 39 Minn. 129, 39 N. W. 76, 1 L. R. A. 222; Glens Falls Ins. Co. v. Elliott, 223 Ky. 206, 3 S. W. (2d) 219.

It is finally argued that the company was not bound by its conduct in accepting the premium on uncommunicated conditions, because the insured was not in good health when the tender of the premium was made. It must be assumed from the record that the society knew nothing of the health of the insured on December 30th, when he mailed his check to it; but, under the circumstances arising, his condition of health became immaterial. The premium was tendered unconditionally, and without any representations whatever. It was inclosed in an envelope without an accompanying communication, and the company accepted it without inquiry as to his health. It was not required to accept it; but, having done so, it could not defeat liability on the policy, even if it had been shown that the assured was seriously sick at the time. The evidence is not clear as to the condition of the insured when the check was sent. It may be inferred from the evidence that his illness was upon him. If the company desired to know the condition of his health

before accepting the money, it had it in its power to ascertain the facts. Indeed, that is the very purpose of requiring a health certificate to accompany the payment of a belated premium. It would be a harsh and unfair rule to hold that acceptance of the premium without the health certificate reinstated the policy, but that it lapsed nevertheless, if it turned out the insured was not in good health when the premium was paid. If the company had declined to accept the money tendered, the insured could not have forced its acceptance, even though in good health. So the company could not accept the money without the health certificate, and then repudiate its liability, if it turned out that the assured was not in good health. It took the risk of conditions which it could, but did not, avoid by the use of the means within its power.

Our consideration of the case brings us to the conclusion reached by the circuit court.

The judgment is affirmed.