## Business Men's Assurance Company of America v. Richardson's Administratrix.

(Decided June 17, 1930.)

LARIMORE & NICHOLS, SOLON T. GILMORE and WOODWARD, HAMILTON & HOBSON for appellant.

STOKES A. BAIRD, Jr., C. B. DOWLING and RODES & HARLIN for appellee.

OPINION OF THE COURT BY JUDGE CLAY—Affirming.

On January 7, 1927, the Business Men's Assurance Company of America issued to Less B. Richardson a combination health and accident policy by the terms of

which it contracted to pay his estate the sum of $3,000 in the event of his accidental death. The insured was accidentally killed on May 22, 1929. The company having denied liability, this action was brought by the administratrix to recover on the policy. The law and facts having been submitted to the court, judgment was rendered in favor of plaintiff. The company appeals.

The motion for a new trial was not tendered in time and the court properly declined to permit it to be filed. There being no separation of the law and facts, and no motion for a new trial, the only questions that may be considered are whether the pleading is sufficient, and whether there is any evidence to support the judgment. Albin Co. v. Ellinger & Co., 103 Ky. 240, 44 S. W. 655, 19 Ky. Law Rep. 1886.

The petition appropriately sets out the issuance, delivery, and terms of the policy, the payment and acceptance of the premiums, and the accidental death of the insured while the policy was in force. In the circumstances there can be no doubt that the petition states a cause of action.

The facts are these: The first premium of $80 was paid by the insured. Thereafter the annual premium of $78 was payable on the 1st day of February in each year with a grace period of 15 days. The premium due in 1928 was paid. The premium due in 1929 was not paid, and the policy lapsed for nonpayment. On May 6, 1929, the insured met at Munfordville his brother-in-law, R. C. Richardson, who was also the agent of the company, and told him that on looking through his desk he found that he had forgotten to send in check for his insurance premium. He then felt in his pocket for a blank check, but did not have one. He then said, "You just send your check for it, and when you come to Hardyville I will pay you." The next morning the agent wrote a check and sent it to the company. The check gave the name of the insured, the number of the policy, and specified that it was for the payment of the premium due. Accompanying the check was a letter dated May 7, 1929, telling the company that through oversight of the insured he had failed to send in the premium, and adding, "should it be necessary to have a health certificate I will forward one at your request signed by applicant." The latter concludes with these words: "I trust that you will give this matter your very prompt attention mailing the receipt to above address." Though this check was mailed on

840

May 7th, witnesses for the company say it was not received until May 13th, when it was indorsed in the name of the company by its president and treasurer and deposited to the credit of the company in the Liberty National Bank in Kansas City. On May 20th the company wrote the insured that it had received the check for the premium and thanked him for it. In this letter the company stated that before it could determine whether or not it could offer the insurance it would be necessary that he furnish a medical health certificate, and inclosed a blank form for that purpose. It would seem, however, that this letter was not mailed from Kansas City until May 21, 1929, at 7 p. m., and was not received at Munfordville until after the death and burial of the insured.

In the recent case of Equitable Life Assur. Soc. of New York v. Brewer, 225 Ky. 472, 9 S. W. (2d) 206, 207, we held that under a policy providing for reinstatement of lapsed policy, on production of evidence of insurability satisfactory to insurer and payment of overdue premiums premium payment, tendered after expiration of period of grace, and retained by insurer on condition that insured sign certificate of good health, was binding on the company, where condition annexed to acceptance was not communicated to insured or expressly or impliedly assented to. In discussing the question we said:

"The company could not receive and retain the premium, and repudiate liability under the policy, It should wait to accept the money until its conditions were communicated to the assured and complied with by him. If it accepted the money in anticipation of the health certificate, it took the risk of liability accruing before notice of the desired conditions was brought home to the assured. When the company received the money, unaccompanied by a health certificate, it constituted an unconditional tender of the premium. The company might have held the check pending performance of the conditions, and no liability could have arisen; but acceptance of the money did not carry with it the conditions, until those conditions were assented to by the assured, or until he was advised of them and given an opportunity to accept or reject them. It is clear in this case that the conditions were not communi-

cated to or accepted by the assured. Indeed, it is not so claimed.''

But the point is made that the above case is not applicable because the check itself was sent on condition that a health certificate should be furnished, and that the premium was accepted only on that condition. With this contention we cannot agree. In the first place, all that the insured told the agent was to send his check. He never authorized the agent to attach any conditions to the payment. Moreover, no condition was attached to the payment of the check. The agent did not tell the company that the check was to be collected only in the event that the insured could furnish a health certificate if required. All that the latter contained was a suggestion on the part of the agent that should it be necessary to have a health certificate he would forward one signed by the applicant. Not only so, but the case is even stronger than the case of Equitable Life Assur. Society v. Brewer, supra. There the policy provided for reinstatement on production of evidence of insurability satisfactory to insurer. In the case at bar there is no such requirement. The policy reads:

> ''If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of the premium by the company, or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injuries thereafter sustained, and such sickness as may begin more than ten days after the date of such acceptance.''

It plainly provides that the subsequent acceptance of the premium shall reinstate the policy, but only to cover accidental injuries thereafter sustained, and such sickness as may begin more than ten days after such acceptance. Whether, under the policy, the company may attach any conditions to its acceptance of the premium, except in so far as they relate to sickness, we need not inquire. Even if that be conceded, the admitted facts cannot be overlooked. Though the check was received on May 13th, the company did not retain the check and advise the insured that it was held subject to his furnishing a proper health certificate. On the contrary, it accepted the check as payment and deposited it to its credit, and the check was actually paid several days before the death of the insured. As the check was sent

by the agent at the instance, and on behalf, of the insured, the effect was the same as if the check of the insured had been sent and accepted. Not until seven or eight days after the acceptance of the premium did the company undertake to attach any condition to its acceptance. Before the condition was communicated to the insured he was accidently killed. We are therefore constrained to hold, not only that there is some evidence tending to support the judgment, but that the evidence considered as a whole makes out a clear case of liability on the part of the company.

Judgment affirmed.