Auden, J.
 

 This case arises out of the following facts:
 

 Gustav Shields, for some thirty years a member of the Cleveland Council of the Royal Arcanum, a fraternal benefit society, died in Cleveland, Ohio, upon December 21, 1925. For a number of years Shields had been in poor health, and his dues and assessments in the order had been paid by his son and daughter, who jointly contributed the necessary amounts. For some three years prior to the in
 
 *33
 
 stitution of the action, the dues and assessments in question had been remitted to the collector of the Cleveland Council at Cleveland, Ohio, by Clara Shields Blanding, daughter of the insured, her brother, Carl F. Shields, contributing thereto. At the time of filing this action and for a considerable time prior thereto, Mrs. Blanding had lived in Lansing, Michigan.
 

 The record shows that for a number of years it had been the unvarying custom of the Cleveland Council through its collector to mail the members each month cards bearing the date of payments due and the amounts of dues and assessments due for each calendar month. Such a card showing the dues and assessments due for November, 1925, was not received in November, 1925, by Mrs. Blanding, upon whom in the family arrangement the obligation rested to pay such dues and assessments. Mrs. Blanding testified that she relied entirely upon the receipt of the card in question for notice, having no other statement of the amount of dues and assessments.
 

 Mrs. Blanding testified that, after her failure to receive the card bearing notice of the dues and assessments due in November, 1925, which should have come to her in the course of November, the local collector of the Cleveland Council did mail her a notice identical with the following form notice, which was inserted in the record, except that the word “November” was filled in the blank covering the month:
 

 “Roll No. - Date-
 

 “According to my records Assessment No. - for the month of-has not been paid.
 

 
 *34
 
 “Will you kindly give this matter your prompt attention and notify me of any errors or omissions on your account.
 

 “Yours in V. M. C.
 

 “Cleveland Council No. 119 R. A.
 

 ‘ ‘ Collector. ’ ’
 

 The collector does not deny that he sent Mrs. Blanding such a notice. In fact he states twice that he “might have sent it,” and does not attempt specifically to fix the time when the notice might have been sent, except that he says, according to his custom and method of taking care of these matters, the notice would have been sent not later than December 5. Mrs. Blanding testified that she received this notice of nonpayment of the assessment on December 15, and that she immediately mailed to the collector in Cleveland a check for the amount of dues and assessments for the month of November, and also for the month of December. The check inserted in the record as an exhibit bears the date of December 15, 1925. The collector states that he received the check on December 19, hence inferentially controverting the fact that the check was sent upon the 15th. Upon December 19 Mrs. Blanding received a telegram notifying her of her father's serious illness . Upon Tuesday, December 22, she went to Cleveland. Upon Thursday, December 24, Mr. Shields died, and the funeral was held upon Monday, December 28. Mrs. Blanding returned to Lansing upon December 29, 1925, and there found the following letter sent her by the collector:
 

 
 *35
 
 “Cleveland, Ohio, December 21, 1925.
 

 “Mrs. F. J. Blanding, 700 Townsend St.,
 

 “Lansing, Mich.
 

 “Dear Madam: I received your check of the 15th for payment of assessment 591, 592, which I am returning, as Gustav Shields was suspended at our last meeting. I am enclosing the reinstatement application for you to have Gustav Shields sign if you want him to be reinstated.
 

 “A few days ago I received a communication from the Supreme Council giving me a list of the Regular Rate members who would attain the age of 65 yrs. in 1926, and I see by that list that G. Shields will be 65 the 3d day of April, and thereafter his assessment will be $23.67 a month. Thinking perhaps you were aware of this fact, was the reason you did not send in the last assessment on time.
 

 “If you care to have him reinstated kindly take care of it at once. With Season’s Greetings, I am,
 

 “Fraternally yours,
 

 “Cleveland Council No. 119,
 

 “H. E. Forbush, Collector.”
 

 The Supreme Council of the Royal Arcanum refused to pay the death benefit upon the ground that at the time of his decease Shields was not a member in good standing and had been suspended from membership for nonpayment of the November, 1925, monthly assessment,, and upon such refusal this action was instituted.
 

 This controversy arises out of and is decided by the following questions:
 

 1. Was the local collector of the Cleveland Coun
 
 *36
 
 cil agent of the Supreme Council of the Royal Arcanum for the purpose of waiver of forfeiture?
 

 2. If so, does the record establish such a waiver of forfeiture?
 

 First considering the character of the authority vested in the local collector, we find from the record that the relevant sections of the constitution and by-laws of the Royal Arcanum provide for payment by each member of the order to the collector of each local council of certain dues and assessments in each calendar year, and authorize the collector to receive and receipt for such dues and assessments. Such dues and assessments are divided between the Supreme Council and the local council, the dues going into the general fund of the local council and the assessments being remitted to the Supreme Council. The local collector is charged with the duty of remitting the assessments to the Supreme Council. A further section of the constitution provides that any member failing to pay any regular assessment before the time prescribed for such payment shall “stand suspended from the order and all benefits therefrom.” It is conceded upon this record that the November, 1925, payment for Gustav Shields had not been made before the time prescribed for such payment.
 

 Further provisions of the constitution are to the effect that the council and its officers are the agents of the members of the order, and not of the Supreme Council, and that none of their acts can create any liability on the part of the Supreme Council, and also that no grand or subordinate council, no supreme or subordinate officer, nor any member of the order, shall have power or authority to waive any
 
 *37
 
 provision or requirement of the constitution or laws of the order.
 

 In spite of these provisions, however, the local collector was the agent, not only of the local council, but also of the Supreme Council. It is true that he was the elected representative of the local council, but he was charged with general responsibility in all matters as to -receipt and remittance of assessments, not only on behalf of the local council, but also on behalf of the Supreme Council. He was the only person to whom the plaintiffs in error were notified to make their payments under the benefit certificate, both of dues for the local council and assessments for the Supreme Council. He had regularly to remit to the Supreme Council its share of the amount collected. Since he was the agent of the Supreme Council for the collection of money due it under the constitution of the order, he was its agent for acts of waiver or estoppel as to the collection of such money. The Supreme Council cannot accept the benefits of his representation and disavow the burdens. Since the work that the collector did linked him directly with the Supreme Council as its agent in the all-important matter of collecting and remitting the assessments, he was the agent of the Supreme Council as well as of the local council.
 
 Modern Woodmen of America
 
 v.
 
 Colman,
 
 64 Neb., 162, 89 N. W., 641;
 
 Modern Woodmen of America
 
 v.
 
 Tevis,
 
 (C. C. A.), Ill F., 13;
 
 Knights of Pythias
 
 v.
 
 Withers,
 
 177 U. S., 260, 20 S. Ct., 611, 44 L. Ed., 762.
 

 The rules provide that the collector shall not receive an assessment tendered by or for a member if the time for payment thereof has expired, and any
 
 *38
 
 such receipt shall not prevent suspension. Though the constitution endeavored to wipe out any liability which might be created by the acts, of the collector or others in waiving a forfeiture, it was not effective to do. so. This doctrine was specifically laid down by this court in
 
 Ohio Farmers Ins. Co.
 
 v.
 
 Cochran,
 
 104 Ohio St., 427, 135 N. E., 537, which declared:
 
 “A
 
 written provision in a policy, ‘No officer, agent, or adjuster, or other representative, shall have power to waive or alter any of the provisions or conditions of this policy * * * unless when actually indorsed hereon or added hereto by such officer, agent, or adjuster,’ etc., does not prevent a waiver of any provision of the policy by the acts and conduct of the insurance company by its duly authorized officers or agents.”
 

 Neither do the provisions of Section 9481, General Code, absolve the order from liability upon this point, since the collector was the agent of the Supreme Council in the matter of the waiver of nonpayment of assessments.
 

 These provisions for suspension from membership and forfeiture for nonpayment of dues or assessments are inserted in contracts of such nature for the benefit of the insurer, and, when default in the time and manner of payment occurs, the insurer may efficiently waive the forfeiture by any course of dealing inconsistent with the claim of suspension, notwithstanding the provisions of the by-laws to the contrary.
 
 Sovereign Camp Woodmen of the World
 
 v.
 
 Tam,
 
 90 Okla., 196, 216 P., 660.
 

 Does the record establish that the collector, acting as agent of the Supreme Council, waived the forfeiture of Shields’ benefit certificate which arose by
 
 *39
 
 nonpayment of the assessment? There is some controversy in the record as to whether the letter calling attention to nonpayment of the assessment for November, 1925, was sent about the middle of December or earlier. We do not consider this material, and do not ground our judgment upon this discrepancy as to the time of notice. Regardless of the particular day upon which this notice was sent, it was admittedly sent after the time for payment of the dues and assessments had expired. It stated that the assessment for the month of November had not been paid, and said: “Will you kindly give this matter your prompt attention.” The notice contained no reference to the possibility of forfeiture and no statement that Shields at that time was suspended for nonpayment of the assessment. It is immaterial also, in our judgment, whether in response to this notice Mrs. Blanding mailed the check on December 15, as she states, or upon a later date, December 17 or 18, as the collector intimates. In any case the check was sent in response to this request from the agent of the Supreme Council, and this request contained no intimation of suspension and no mention of the necessity for reinstatement.
 

 There is also a controversy in the record as to whether a reinstatement application was inclosed with the letter of December 21, 1925, above given, but this circumstance also is immaterial. Upon the conceded facts Mrs. Blanding received this letter after the death of Shields, upon her return to Lansing, Michigan, when the reinstatement application could not have been instituted. Mrs. Blanding was verbally told after the funeral that a difficulty existed with regard to payment of the benefit, but no
 
 *40
 
 notice of suspension was ever received during the lifetime of Gustav Shields. Hence Mrs. Blanding could not, as she could have done if notified of suspension in the early part of December, institute proceedings for reinstatement.
 

 This action by the agent of the Supreme Council of the Royal Arcanum constituted a waiver of the defendant in error’s right to claim that the decedent was suspended at the date of his decease. The insurer cannot be allowed to claim that the insured was bound to pay the assessment, but that it is not liable on the benefit certificate. By the request to “Kindly give this matter your prompt attention,” the Supreme Council treated Shields as in good standing subsequent to the date of his suspension under its rules. In compliance with this notice Mrs. Blanding made the requisite payment, and never received notice of suspension until after her father died.
 

 This holding is in direct line with the doctrine laid down in the case of
 
 Murray
 
 v.
 
 Home Benefit Life Assn.,
 
 90 Cal., 402, 27 P., 309, 25 Am. St. Rep., 133, which held that if an insurance company, after knowledge of any default for which it might terminate the contract of insurance, enters into negotiations or transactions with the assured which recognize the continued validity of the policy and treat it as still in force, the right to claim a forfeiture for such previous default is waived.
 
 Noem
 
 v.
 
 Equitable Life Ins. Co. of Iowa,
 
 37 S. D., 176, 157
 
 N. W.,
 
 308.
 

 The decisions upon the question of waiver of the payment of insurance premiums are in hopeless conflict. The Ohio decisions cited, while supporting this conclusion in principle, are not in point upon
 
 *41
 
 the facts.
 
 Manhattan Life Ins. Co.
 
 v.
 
 Smith,
 
 44 Ohio St., 156, 5 N. E., 417, 58 Am. Rep., 806;
 
 Union Central Life Ins. Co.
 
 v.
 
 Pottker,
 
 33 Ohio St., 459, 31 Am. Rep., 555. However, our conclusion in the instant case is supported by the following authorities and decisions: 3 Couch’s Cyc. of Insurance Law, page 2262
 
 et seq.; Pennsylvania Lumberman’s Mutual Fire Ins. Co.
 
 v.
 
 Meyer,
 
 (C. C. A.), 126 F., 352.
 

 “An unconditional demand for the payment of a past-due premium, especially if followed by payment in accordance therewith, operates as a waiver of the forfeiture from the time of the demand.” 5 Cooley’s Briefs on Insurance (2d Ed.), 4430, citing
 
 Bailey
 
 v.
 
 Mutual Benefit Assn.,
 
 71 Iowa, 689, 27 N. W., 770;
 
 Bingler
 
 v.
 
 Mutual Benefit Life Ins. Co.,
 
 10 Kan. App., 6, 61 P., 673;
 
 Farmers’ Mutual Life Protective Assn.
 
 v.
 
 Elliott,
 
 4 Ga. App., 342, 61 S. E., 493;
 
 Williams
 
 v.
 
 Empire Mutual Annuity & Life Ins. Co.,
 
 8 Ga. App., 303, 68 S. E., 1082;
 
 New England Mutual Life Ins. Co.
 
 v.
 
 Springgate,
 
 129 Ky., 627, 112 S. W., 681, 113 S. W., 824, 19 L. R. A. (N. S.), 227;
 
 Loftis
 
 v.
 
 Pacific Mutual Life Ins. Co.,
 
 38 Utah, 532, 114 P., 134;
 
 McNaughton
 
 v.
 
 Des Moines Life Ins. Co.,
 
 140 Wis., 214, 122 N. W., 764.
 

 In the instant case the claim of the plaintiffs in error is even stronger than in certain of the cases above cited, for, after failure to notify Mrs. Blanding of the payment due in November, a notice was sent that the payment had been missed, and she was directed to take care of the matter promptly, with no warning of the need of instituting reinstatement proceedings. This injunction may have resulted, and doubtless did result, in Mrs. Blanding’s failure to institute reinstatement proceedings for her
 
 *42
 
 father, and loss of the rights which had accrued from payment of the dues and assessments over a long period of years.
 

 Since there is no controversy upon the essential facts in this case, the judgment of the Court of Appeals is reversed, and judgment is entered for the plaintiffs in error.
 

 Judgment reversed and judgment for plaintiffs in error.
 

 Marshall, C. J., Kink ale, Robinson and Day, JJ., concur.