## Denton v. Provident Life & Accident Insurance Company.

(Decided March 13, 1931.)

B. J. BETHURUM for appellant.

BEN V. SMITH & SON for appellee.

OPINION OF THE COURT BY JUDGE DIETZMAN—Affirming.

On February 11, 1928, the appellee executed and delivered to the appellant a policy of insurance indemnifying him among other things against sickness. The policy as written provided for an annual premium of $59.40, but when the agent undertook to deliver it to the appellee, he declined to receive it unless the premium should be payable in quarterly installments and that was agreed upon between them. Appellant paid the first installment of $14.85 covering the quarterly period from February 11 to May 11, 1928. He made no further payment of premium until August 13, 1928, when he sent a check for $14.85 to the appellee at its home office in Chattanooga, Tenn. He wrote on the check: "For 1 qr, Pol. 1078780." The company mailed him back under date of August 15, 1928, the following receipt: "Received of Dudley E. Denton Fourteen & 85/100 Dollars on account of balance payment on policy No. 1078780 subject to all the provisions and conditions of said policy." On the 16th day of August, 1928, the appellant became violently ill and remained under the treatment of a physician until January 5, 1929, at which time he was able to sit up but was unable for several weeks thereafter to perform any of the duties pertaining to the business and occupation in which he was engaged. He applied to the appellee to pay him the sick benefits provided for by his policy, and they declining to do so, he brought this suit for $750. The company defended along several lines, but abandoned in the lower court and in this court all of its defenses except those based on section F of the Special Provisions and section 3 of the Standard Provisions in the policy, which read:

"Sec. (f). This policy, except Part IX, takes effect at twelve o'clock noon of the date hereof, Standard time, at the Insured's residence, if the Insured is in sound health and free from injury at

that time, and Part IX takes effect fifteen days thereafter (in accordance with paragraph (2) of the Insuring Clause) if all premiums due meanwhile have been paid as agreed. If not written on the monthly payment plan, the whole policy expires one year from its date, unless renewed or terminated sooner in accordance with its terms; if written on the monthly premium payment plan the whole policy shall be in force so long as the premiums are paid under the terms of the pay order therefor, unless cancelled by the Insured or the Company at the expiration of the policy year in accordance with the terms of said pay order.''

''3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of the premium by the Company or by and of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained, and such sickness as may begin more than ten days after the date of such acceptance.''

The company took the position that by the payment of the premium on August 13th, the policy had been reinstated, having therefore lapsed for appellant's failure to pay the May premium; that although thereby the policy was in effect from August 11th to November 11th, yet the sickness for which the appellant sought compensation having occurred within 10 days after the policy had been reinstated, the company was not liable under the provisions of the policy above quoted. After all the testimony, both that of appellant and that of appellee, had been introduced, the court peremptorily instructed the jury to find for the appellee, and from the judgment entered on that verdict, this appeal is prosecuted.

By reason of the concessions of the appellee abandoning all of its defenses except those stated above, many of the propositions argued by the appellant in his brief are eliminated from the case. The ground for reversal most strongly relied upon is based on the general proposition, which appellee also concedes, that where an insurance company accepts and retains an overdue premium without notice to the insured that conditions are imposed upon reception of the premium, it will be held to have waived any right of forfeiture it may have had or estopped to claim that the policy was not in

effect. See Equitable Life Assurance Society of New York v. Brewer, 225 Ky. 472, 9 S. W. (2d) 206. But, as appellee well argues, that is not the controlling principle of this case. By its own terms, which we have quoted above, the policy was in effect only so long as the premiums were paid. Hence during the period between May 11th and August 11th, the policy was not in effect. As said in Bane v. Travelers' Ins. Co., 85 Ky. 677, 4 S. W. 787, 790, 9 Ky. Law Rep. 211:

> "It is really a misnomer to say that the policy in this instance was forfeited by the non-payment of the premium. The insurance by the express terms of the policy, ceased because of such non-payment. The payment of the premium was a condition precedent to the continuation of the risk, and even a court of equity will not interfere to release one from the consequences of such a failure."

This Bane case was followed in the similar case of Stewart v. Continental Casualty Co., 229 Ky. 634, 17 S. W. (2d) 745, 67 A. L. R. 175.

It is not necessary in this case to determine whether appellant could insist that the premium he paid by his check of August 13th should be applied to the quarter from May 11th to August 11th, for he is not seeking to recover for any illness that occurred during that period. Were the premium applied to that quarter, as no subsequent premiums were ever paid, the policy would be lapsed as of August 11th and would not have been in effect at the time of appellant's illness. Appellant insists that the policy was in effect at the time he became ill, and the company concedes his contention by applying the premium to the period beginning August 11th and ending November 11th. When the company accepted the check of August 13th, it promptly sent appellant a receipt, stating that the money was received "on account of balance payment on policy No. 1078780, subject to all the provisions and conditions of said policy." Appellant, as he admits in his testimony, knew that he had made no payment of any premium since the preceding February. He was himself an insurance agent. The policy which he had in his possession by its express terms informed him that the subsequent acceptance of a premium by the company after a default on payment would reinstate the policy, but only to cover such sickness as

might begin more than 10 days after the date of such acceptance. With full knowledge of this condition, he sent his check of August 13th, and the receipt he got back informed him in substance that the check had been accepted in accordance with the conditions under which it had been sent and of which he knew. It is in this that the case differs from that of Business Men's Assurance Co. of America v. Richardson's Adm'x, 234 Ky. 838, 29 S. W. (2d) 563. In that case the insured arranged for the payment of an overdue premium with the agent of the insurance company, nothing being said about any conditions being attached to the payment of that premium. And so the case fell within the general rule set out above and conceded by the appellee. But here appellant made his payment knowing the condition under which it was being made as set out in his policy, or if he did not actually know it, he was, of course charged with its knowledge; the policy having been in his possession six months and no suppression being charged against the appellee. The company on receipt of the premium reiterated the fact that it was accepted subject to the terms and conditions of the policy. The whole transaction was simply a reinstatement of a lapsed policy subject to the conditions attendant upon a reinstatement set out in the policy, which appellant knew or of which he was charged with knowledge. The condition upon which the policy was reinstated was that it should not cover any illness which began less than 10 days after the acceptance of the premium, and as appellant's illness began within that time, it was not included within the indemnity provided for by the policy. See American National Insurance Co. v. Otis, 122 Ark. 219, 183 S. W. 183, L. R. A. 1916E, 875.

Appellant insists, however, that at the time he took this policy out, appellee's agent agreed to call at the appellant's office each quarter and collect the premium, and that because the agent failed to do this, the company should not be permitted to forfeit the policy. Appellee's agent denies making any contractual agreement as thus claimed by the appellant, but does admit that he agreed as a matter of convenience to appellant to call for the premium each quarter, but says that he told appellant that if he failed to call, to send the premium as the policy on its face provided to the company itself. Appellant admits the agent called to collect the premium in May, but as he came ahead of the due date of the premium by a few

days, he then declined to pay him. Appellee's agent said that he called several times after the due date but never could catch appellant in his office. Appellant in his brief agrees that he cannot insist on this agreement with the agent as a contractual right because it varies the terms of his written contract, but he says that the company should be estopped to take advantage of its agent's failure to make the collection as agreed upon because of appellant being lulled into insecurity by reason of relying upon it. However, appellant when he mailed his check of August 13th, knew he had made no payments of premiums, since the preceeding February. He knew exactly how much he was in arrears. He did not wait for the agent to come and collect, but mailed the premium to the company itself. He did not undertake to pay anything but the current premium, no doubt because nothing had occurred between May 11th and August 11th to entitle him to any benefits, and he chose to save the expense of the premiums for that period. There is nothing on this showing to indicate in what way appellant was lulled into any insecurity by the failure of the appellee's agent to call and collect the premium. Appellant knew appellee's agent had not done so. He knew the terms of his policy. With all this knowledge, he chose to let the quarter of May 11th to August 11th go unpaid, and not because he was expecting appellee's agent to call for the premium, for he paid what he chose to pay by his check of August 13th in the face of the failure of appellee's agent to call for the premiums. There is no estoppel present to prevent the company from relying on the terms of its policy.

It follows that the trial court did not err in giving the peremptory instruction it did, and its judgment is affirmed.