WELLER v. MANUFACTURER'S LIFE INS. CO.

1. INSURANCE—PREMIUMS—TIME OF PAYMENT—POSTPONEMENT.
   Where life insurance policy dated August 23d provided that premium was due and payable on delivery of policy, and thereafter on each succeeding 23d day of August until premiums were paid in full, delay in delivery of policy did not have effect of postponing due date of subsequent annual premiums.

2. SAME—UNCONDITIONAL ACCEPTANCE OF PREMIUM.
   In action on life insurance policy, finding of trial court that insurer accepted unconditionally payment of premium after expiration of grace period, held, sustained by record, notwithstanding insurer later mailed blank application for reinstatement.

3. SAME—WAIVER BY ACCEPTANCE—ESTOPPEL.
   Waiver by acceptance of premium after due date is not based on contract, but on theory that insurer is estopped to insist on conditions of contract inconsistent with unconditional acceptance of premium.

4. ESTOPPEL—WAIVER DEFINED.
   Waiver is intentional relinquishment of known right.

5. INSURANCE—UNCONDITIONAL ACCEPTANCE OF PREMIUM—WAIVER— NOTICE OF INSURED'S ILLNESS.
   By unconditionally accepting premium after expiration of grace period, insurer waived conditions of policy requiring reinstatement and showing of insurability, although at time it had no knowledge of insured's illness.

Appeal from St. Clair; Robertson (William), J. Submitted October 21, 1931. (Docket No. 150, Calendar No. 36,007.) Decided, January 4, 1932.

Assumpsit by Vera E. Weller against the Manufacturer's Life Insurance Company, a foreign corporation, as beneficiary under a policy of life insurance. Judgment for plaintiff. Defendant appeals. Affirmed.

*John B. McIlwain,* for plaintiff.

*Walsh, Walsh & O'Sullivan,* for defendant.

CLARK, C. J. Defendant issued to Enoch C. Weller a policy of life insurance in which plaintiff, the wife, is beneficiary. She sued on the policy and prevailed. Defendant has appealed.

The policy is dated August 23, 1929, and it provides:

"Premium payable and due date: $24.40 on delivery of this policy and a like amount thereafter on each succeeding 23d day of August until premiums for 20 full years have been paid.

"Policy year: Computed as from the 23d day of August, 1929."

The policy was delivered and first premium paid December 16, 1929, and it is argued that this had the effect of changing the policy year and the premium due date to December 16th. The contract is otherwise. So is the law.

In *Jewett* v. *Northwestern National Life Insurance Co.,* 149 Mich. 79, it was held, quoting syllabus:

"That a life-insurance policy dated August 1st, and providing for payment of premiums on the 1st day of certain months, was not issued until August 18th, does not postpone the time of payment of the subsequent premiums to the 18th of the several months."

In *McCampbell* v. *New York Life Insurance Co.*
(C. C. A.), 288 Fed. 465, it was held, quoting syllabus:

"The date stated in a life policy as the anniversary and the date of payment of premiums controls,
and the policy will lapse, unless premiums are paid
on that date, or within the grace period thereafter,
notwithstanding a provision in the policy that it
does not become of effect until payment of the first
premium, in which case it relates back to the date of
application, and the fact that insured was not protected between the date of application and the date
of payment of first premium is immaterial."

The premium due August 23, 1930, was not paid
when due, nor during the period of grace. On October 16, 1930, Mr. Weller was fatally sick. Plaintiff
on that day called defendant's Lansing office by
telephone and asked if she could send in her husband's premium. The answer was "Yes." That
the husband was sick was not revealed, nor did defendant's agent say anything of application for reinstatement, which application in form common to
life insurance practice with letter directing its execution was mailed to Mr. Weller later that day. It
arrived after his death. On the same day, October 16th, plaintiff remitted by telegraph the amount
of the premium. It was received and accepted by
defendant.

On October 17th, plaintiff again called by telephone and inquired if the remittance had been
received. The answer was, "All right," or "All
O. K." Mr. Weller died on the morning of October 18th.

Defendant tendered back the amount of the premium. Under the policy reinstatement could be effected, (a) on written application made by the in-

sured within three years from date of lapse; (*b*) on production of evidence of insurability satisfactory to the company; and, (*c*) on payment of all overdue premiums and any other indebtedness to the company upon the policy. There was compliance with last requirement only.

Defendant contends that payment of the premium was but one step in the matter of reinstatement, that it was its duty to receive the money, and that other requirements of the contract were not waived and it stresses the fact that the letter of October 16th to insured, referring to "our telephone conversation of this afternoon" and enclosing form of application for reinstatement, shows no waiver, shows the money was not received unconditionally. If Mr. Weller had lived and received such letter and form of application, defendant contends he would not be heard to say the premium had been received unconditionally and his beneficiary is in no better position.

On the question of unconditional acceptance, the letter is a matter of fact to be considered. The testimony of oral conversations between plaintiff and defendant, which is not disputed, shows defendant authorized remittance without condition, that plaintiff remitted in reliance thereon, and that defendant accepted unconditionally. The finding of the trial court that "defendant accepted the payment unconditionally" is sustained. See *Rasmusen* v. *New York Life Insurance Co.*, 91 Wis. 81 (64 N. W. 301); *Shields* v. *Supreme Council R. A.*, 123 Ohio St. 31 (173 N. E. 731).

If insured had walked into insurer's office and had asked, "May I pay my premium?" and had been answered, "Yes," and he had paid it, and it had been accepted without condition, the insurer could not avoid the effect of what had been done by send-

ing, later, an application for reinstatement with direction that it be executed. We see no difference in principle in the fancied case and the one before us.

Waiver by acceptance is not based upon contract. It is that the company is estopped to insist on conditions of the contract inconsistent with unconditional acceptance of the premium.

Defendant had no knowledge of insured's fatal illness on October 16th and 17th. It is contended that acceptance, though unconditional, without knowledge of the illness, is not a waiver of the default. Waiver is the intentional relinquishment of a known right. The right here involved was to insist on forfeiture or to decline revival of the policy except by reinstatement in accordance with its terms. Defendant knew its right. It had full knowledge of the facts avoiding or forfeiting the insurance. It waived reinstatement and showing of insurability. It waived forfeiture. It accepted the premium unconditionally. Such acceptance was rightly held by the trial court to be an intentional relinquishment of the known right, a waiver. The policy was thereby revived. *Hoyle* v. *Grange Life Assurance Ass'n,* 214 Mich. 603; 3 Joyce on Insurance (2d Ed.), § 1369; 3 Couch, Cyclopedia of Insurance, § 687.

Appellant relies on cases, chiefly (*United Order, etc.,* v. *Hooser,* 160 Ala. 334 [49 South. 354, 355]), which seem to hold that for the waiver to be valid the insurer must know not only the facts avoiding or forfeiting the insurance, but also must know the consequences of a waiver. The validity of the waiver then would depend not only on knowledge of the right to be waived and the facts avoiding or forfeiting the insurance, but also on whether insured is then a good risk, there being waiver if the

insured is in good health and no waiver if the insured is not in good health. This is beside the doctrine of waiver. It would produce here a paradox that insurer waived matter of health or insurability and yet did not waive it.

We quote syllabus from *Bingler* v. *Mutual Benefit Life Ins. Co.*, 10 Kan. App. 6 (61 Pac. 673):

"The assured was, at the time he received the request for payment and complied therewith, prostrated with a sickness from which he subsequently died. It was not necessary that plaintiff prove notice of this fact to the company, to sustain the reply of a waiver of the forfeiture."

The payment of the premium here was not as upon reinstatement but in legal effect as made and accepted in accordance with the terms of the policy and as made in due time. We quote from a well-reasoned case, *O'Connor* v. *Knights and Ladies of Security*, 178 Iowa, 383 (158 N. W. 761, L. R. A. 1917B, 897):

"It is argued, however, that, as the company did not know that he was sick at the time it received these payments, it cannot be said to be estopped or to have waived the forfeiture. It did know of the provisions of its policy, and that a failure to pay within the month suspended the member, and forfeited all his rights under the policy, and this would be true even if he were not sick, and it was then that it could have insisted upon the terms of its contract and treated the plaintiff as suspended and the contract forfeited. It elected not to do this— not to treat the plaintiff as suspended, or his contract forfeited for a mere failure to pay within the time. It continued his contract in force, notwithstanding this fact and knowledge of this fact, and received further assessments and dues. It there-

fore waived any forfeiture based upon the failure to pay within the time.

"A different question would arise if the forfeiture had been insisted upon and the assured had undertaken to be reinstated under the terms of the policy. Then it would be incumbent upon the assured to make a showing as to his health, and any fraud practiced by him touching this matter would have avoided a reinstatement, or any concealment on his part of a fact that would prevent reinstatement would have been fatal to his right. We must keep always in mind the thought that the suspension and forfeiture relied upon here are related to and are involved in the one act, and that is, the failure to pay the February dues during the month of February. The right to be reinstated, if forfeiture had been insisted upon, is a different matter. Then the question of the health of the assured would be a matter for consideration.

"It is insisted, further, that as the society did not know of his sickness at the time it received these dues, it cannot be held to have waived the forfeiture, because, as it is assumed, if it had had this knowledge, it would not have done these acts which now are alleged to constitute the waiver. But the record discloses that it made no inquiry touching his health at the time it received these dues; that the dues were not accepted subject to any showing as to his health; that the dues were received and accepted as a compliance with the requirements of the original contract. The company owed some duty, if it desired to insist upon the forfeiture, and if it desired to accept the fees subject to a showing as to health, to so indicate to the assured; or, at least, to have made some inquiry touching the matter before accepting the fees as a full performance of the original contract."

See, also, *Bailey* v. *Sovereign Camp, W. O. W.,* 116 Tex. 160 (286 S. W. 456, 288 S. W. 115, 47 A. L.

R. 876); *Equitable Life Assur. Soc. v. Brewer*, 225 Ky. 472 (9 S. W. [2d] 206); *Globe Mutual Life Insurance Co. v. Wolff*, 95 U. S. 326; *Clark v. Manufacturers' Ins. Co.*, 8 How. (U. S.) 235; 14 R. C. L. p. 1190; 37 C. J. p. 536.

Affirmed.

McDONALD, POTTER, SHARPE, NORTH, FEAD, WIEST, and BUTZEL, JJ., concurred.