Rebecca A. **ANDRUS, Individually and as Executrix of the Estate of Joe Edd Andrus, Appellant,**

v.

**PREFERRED RISK LIFE INSURANCE COMPANY, Appellee.**

No. 88–CA–1937–MR.

Court of Appeals of Kentucky.

Oct. 6, 1989.

Tim Futrell, Futrell, Hopson & Parris, Cadiz, for appellant.

David L. Cotthoff, Chewning, Underwood & Cotthoff, Hopkinsville, for appellee.

Before CLAYTON, ELSWICK and McDONALD, JJ.

McDONALD, Judge.

Rebecca Andrus has appealed from a summary judgment in favor of the appellee, Preferred Risk Life Insurance (Preferred), in a suit to recover life insurance proceeds. The policy in question, a decreasing term life policy in the sum of $40,000, was issued on March 7, 1981. Rebecca Andrus was the beneficiary. Her husband, Joe Edd Andrus, the insured, was the owner of the policy. Premiums in the sum of $27.30 were automatically deducted from the Andrus's checking account under a preauthorized check plan. The policy provided for a grace period of 31 days after the premium due date to pay any premium due. If the insured died during the grace period the proceeds were still payable. However, if the premium was not paid by the end of the grace period, the policy provided that it was terminated.

The preauthorized check issued by the insurance company for the September 1985 premium was returned to the company for insufficient funds. The grace period went by without payment being made by the Andruses. On October 10, 1985, Preferred sent Mr. Andrus a document entitled "Late Payment Offer." This letter explained that the past-due premium would be accepted, presumably continuing the policy, if the offer was signed and returned with the premium and "if postmarked not later than the expiry date," that date being October 25, 1985. Execution of the late payment offer certified only that the insured was alive. The Andruses still did not send in the premium by the October 25 deadline.

On the evening of October 26, Joe Edd Andrus became very ill and required hospitalization. Rebecca, at her husband's direction, signed the late payment offer form for him and dated it October 25, 1985. She was unable to obtain a money order that night. On Sunday, October 27, she had a friend obtain a money order for $54.60, and the date of October 25 was inserted on the payment as well. When asked why the date of October 25, 1985, was inserted on the late payment, she answered, "Because

that is when I needed it there. I was desperate. I saw something bad was wrong. I was desperate."

The cashiers check and the late payment form were placed in the mail on October 27. They were received by the appellee insurance company on October 31, 1985. Between the mailing of the payment and its receipt, Joe Edd Andrus died on October 29.

When Preferred received the late payment form and the payment, for reasons not clear in the record, it did not save the envelope showing the postmark. Despite the fact the payment was received six days from the expiry date, the company issued a conditional receipt to Joe Edd on November 14. An underwriter for Preferred testified that she authorized the receipt and the continuation of the policy because the late payment offer and the check both bore the date of October 25. The condition contained in the receipt for the continuation of the policy was only that "the payment was made during the lifetime of all persons insured under the policy." Continuation of the policy was not conditioned on Joe Edd's good health.

Some weeks later Rebecca attempted to obtain the death benefits under the policy. After an investigation, Preferred denied her claim and returned the $54.60 premium. This action was then commenced by Mrs. Andrus and disposed of on Preferred's motion for summary judgment.

The defense asserted by Preferred was, of course, that the policy had lapsed by its own terms when the September 1985 premium was not paid within the contractual grace period or by October 25, the last date offered by Preferred for continuous coverage. It argues the conditional receipt was issued solely because of the misrepresentations of Rebecca Andrus and that it is justified in revoking its acceptance of the payment and its waiver of the forfeiture provisions of the policy.

The appellant contends that Preferred is estopped from asserting forfeiture because of its prior dealing with them and, alternatively, that the actions of Preferred in accepting the premium payment and issuing the receipt constituted a waiver by the company of the forfeiture provisions of the policy.

■■■ Whether an insurer's history of dealing with its insured is such to cause the insured to believe that strict compliance with the terms of a policy is not necessary, thereby constituting an estoppel, is generally a question of fact not appropriate for summary disposition. *Radford v. Lincoln Income Life Ins. Co.*, Ky.App., 743 S.W.2d 33 (1987). However, the evidence in this case is that the Andruses had always paid the premium owed on or before the date contained in the late payment offer. On only one previous occasion was a premium tendered after the expiry date in the late payment offer, and Preferred required Joe Edd to complete a reinstatement application and provide information about his health and insurability. There is no evidence in the record that late premiums would be accepted by Preferred to keep the policy in force without requiring formal reinstatement, and thus no evidence to support the appellant's estoppel theory. Furthermore, Rebecca's deposition testimony clearly indicates she was aware of the necessity to make timely premium payments.

■■■ We further find no error in the trial court's refusal to accept the appellant's arguments concerning waiver of forfeiture. We do agree with Rebecca that her insertion of an earlier date on the late payment form and the fact that she signed the form for her husband are not material to this issue. The late payment offer, essentially an offer of an extended grace period, contained only the condition that it be signed and *postmarked* by October 25. That Rebecca dated the form and the check with that date is not significant nor can Preferred justify revocation of its waiver on that basis.

The crucial date, according to the plain terms of the offer, was the date on the postmark. Preferred knew or should have known that the payment and the form were mailed out of time. Had Joe Edd survived until Preferred authorized the continuation of the policy, we believe the waiver of the forfeiture would have been upheld against Preferred. *See Equitable Life Assur. Soc.*

*v. Brewer*, 225 Ky. 472, 9 S.W.2d 206 (1928).

It is because Joe Edd died *before* the actions constituting waiver were taken and not because of any misrepresentations by Rebecca that the doctrine of waiver does not apply. *See Couch on Insurance (2d)* (Rev ed) § 32.281 (1985). In *Allstate Insurance Co. v. Mooney*, Ky., 562 S.W.2d 950, 952 (Tx.Civ.App.1978), a case with the same fact pattern as here, the Court reasoned thusly: "The essential foundation of a life insurance policy is the life of a human being. After the insured dies, the waiver of a forfeiture, which occurred before his death, cannot restore the life insurance contract." *See also Robertson v. Reliable Life Ins. Co.*, 570 S.W.2d 787, 790 (Mo.App.1978), which states, "After having become forfeited in the lifetime of Mr. Robertson, the policy could not be resuscitated or continue to endure as a contract after his death."

The appellant's reliance on *Equitable Life Assur. Soc. v. Brewer, supra*, where a late payment was tendered and accepted after the grace period, is misplaced as the insured in that case was alive when the actions amounting to waiver were made. Simply, Joe Edd having died with the policy in a lapsed state, there is nothing to which waiver can attach.

"Waiver is the intentional relinquishment of a known right...." *United States Fidelity & Guaranty Co. v. Miller*, 237 Ky. 43, 34 S.W.2d 938, 940 (1931). It cannot be contended that Preferred "intentionally" waived its right under the policy to claim forfeiture when, at that time, it had no knowledge of Joe Edd's death. As there is no factual dispute that Preferred was not aware of Joe Edd's death when it decided to continue the policy, summary judgment in its favor was appropriate.

The judgment of the Trigg Circuit Court is affirmed.

All concur.