FRYSH, Respondent, vs. COMMERCIAL CASUALTY INSURANCE COMPANY OF NEWARK, NEW JERSEY, Appellant.

*February 8—March 6, 1934.*

454

For the appellant there was a brief by *Kaftan, Rahr & Kaftan* of Green Bay, and oral argument by *Raymond J. Rahr* and *Robert A. Kaftan, Jr.*

For the respondent there was a brief by *Hausner & Martineau,* attorneys, and *V. J. O'Kelliher* of counsel, all of Oconto, and oral argument by *Mr. O'Kelliher.*

WICKHEM, J. The sole question involved in this case is whether the policy was in force at the time of the accident. This requires some consideration of the circumstances and also of the policy provisions.

On April 15, 1931, Mike Frysh was solicited by one Scribner, an agent of the defendant company, to take an accident and health policy in defendant company. On that day he signed an application which provided that he was to pay a policy fee of $2 and a monthly premium of $2.30. At that time he paid the agent $1. The policy was delivered to Frysh on April 24th, and he gave Scribner a check for $7.90. Of the total of $8.90 thus paid, $2 was to be applied as a policy fee and the balance of $6.90 to pay for three

monthly premiums. The receipt for the first payment of $1 simply acknowledges receipt of $1, "being payment in advance of the monthly premium upon the policy so applied for." The policy contains the following provision material upon this appeal:

"Commercial Casualty Insurance Company, of Newark, New Jersey (hereinafter called the company),

"In consideration of the policy fee of two and 00/100 and the monthly premium of two and 30/100 dollars and of the statements in the application for this policy, a copy of which is indorsed hereon and made a part of this contract,

"Does hereby insure Mike Frysh . . . from 12 o'clock noon, standard time at the place where the insured resides on the day this contract is countersigned, until 12 o'clock noon, such standard time, of the first day of May, 1931, and for such time thereafter as the premiums paid by the insured, as herein agreed shall maintain this policy in force."

The policy was countersigned April 15, 1931, and effective as of that date. Each policy-holder was given a premium receipt book which contained the name and address of the insured, the name of the collector, the policy number, spaces for the entry by the agent of payments of premium, and for insertion of the date to which each premium carried the insurance.

It is defendant's contention that the policy is unambiguous; that the first of the monthly payments kept the policy in force from April 15th to May 1st, and that the other two carried the policy to July 1st. Plaintiff's contention is that Mike Frysh paid $2 for a policy fee, and three monthly premiums amounting to $6.90, and that, the policy having gone into effect on April 15th, the three monthly premiums should carry the policy to July 15th.

We see no escape from defendant's contention. The policy is stated to have been issued "in consideration of the policy fee of two and 00/100 and the monthly premium of two and 30/100 dollars." In consideration of these two

payments the policy is stated to give coverage until the first of May. The insurance is continued thereafter for such period as the stipulated monthly payments carry it. Deceased made two other monthly payments, and by the terms of the policy the insurance was thereby continued up to the first of July. In so far as the policy is concerned, it is unambiguous and this conclusion is inescapable. There is no room for construction. If there were, there is nothing in the circumstance or in other provisions of the policy itself that could lead to any different conclusion. The receipt book of the insured records three payments of premium. This book contains a column entitled "date paid to." The first payment of $2.30 is stated to carry the policy to May 1st, the second to June 1st, and the third to July 1st. This accounts for all of the money paid by insured except the $2 concededly paid as a policy fee. The entries in the receipt book give support, if any support is necessary, to the construction which we place upon the policy itself. Such evidence as was offered to throw light upon the intention of the parties also supports this construction. So far as premium payments are concerned, it was the policy of the company to have the contracts run from the first of one month to the first of the next month. Inasmuch as applications were taken without regard to date, it was necessary to have some sort of a rule governing policies issued at times other than the first day of the month. The evidence is that it was the policy of the company to treat the 20th of the month as a dead line, and that with regard to policies issued on or before the 20th, the first monthly premium carried the policy to the first of the next month. On policies taken out after the 20th, the first premium would carry them to the first of the second month thereafter. The policy, the receipt book, and the conduct of defendant with respect to this policy are all consistent with this practice. Nor do

we think there is any merit in the contention that such a construction tends to work a fraud upon the insured. It seems to us not unreasonable that an insurance company should desire to have its premium payments operate on the insurance as of the first of each month. This being true, there must necessarily be some sort of adjustment. While in this particular case the result is that the first premium paid for less than a month's insurance, in other cases the first premium would pay for more than a month's insurance, and the adoption of such a practice cannot be said to evidence an intention upon the part of the company to defraud or impose upon prospective policy-holders. While this policy was not actually delivered until the 24th of April, it expressly covered the risk from the 15th of April, and hence fell within the rule of the company. Further than this, such a contention has no materiality as an aid to construction when the policy is perfectly unambiguous. Plaintiff is standing upon the policy, and is bound by the plain, unambiguous terms contained therein.

The contention is made that the burden of proof was upon defendant to show that the July premium was never paid by deceased, and that there is no evidence in the record to the effect that it was not paid. This contention is without merit. John Jaworski testified that insured worked for him during his lifetime and was working for him at the time he was killed in the accident. He testified that he was authorized by insured to make payments on the policy, and that he made out the check for $7.90, which constituted one of the two payments made by insured on the policy. He testified that at no time thereafter did he make any payments on behalf of the insured; that he never saw the insured pay to defendant's agent any money after April 24th. The receipt book of the insured credits only three payments. It is clear enough that the custom with respect to paying premiums

was for Scribner, the agent, to call and collect them.  Scribner testifies:

"If this premium wasn't paid for the month of July, I would have collected it if I had been working over there.

"The Court: When would you have collected this next premium?  A. I would have collected it just as quick as I could get out there after the 1st."

We think the foregoing sufficiently indicates non-payment of the July premium, and warrants the conclusion of the trial court that the total payments on this policy were $8.90 only.  This being true, the contention that the burden of proof is not met must fail.

In view of the foregoing, it follows that judgment must be reversed and cause remanded with directions to dismiss the complaint.

*By the Court.*—Judgment reversed, and cause remanded with directions to dismiss the complaint.