[Civ. No. 10419. Second Appellate District, Division One.—January 6, 1936.]

PRESTON VINTHER et al., Respondents, v. SUNSET MUTUAL LIFE INSURANCE COMPANY (a Corporation), Appellant.

Carlos S. Hardy for Appellant.

Eugene P. Fay for Respondents.

ROTH, J., *pro tem.*—Plaintiffs and respondents are the children of Claude A. Vinther, now deceased. Said deceased on December 11, 1930, entered into a contract with defendant, insuring himself against sickness and accident, in consideration for which policy of insurance, deceased paid quarterly premiums in a stipulated amount. The contract of insurance by its express terms provided that the next quarterly premium due immediately subsequent to the issuance of the contract was March 15, 1931, and was payable quarterly thereafter. Deceased was killed in an accident at Red Bluff, California, on July 9, 1933. On July 8, 1933, the day prior to his death, deceased had mailed to defendant from the postoffice at Proberta, California, the quarterly payment which had become due on June 15, 1933. From the date of the issuance of the

policy until the final premium was paid, premiums became due and were paid as follows:

| "Due date as fixed by policy | Date paid | Days Late. |
|---|---|---|
| December 11, 1930 | December 11, 1930 | 0 |
| March 15, 1931 | March 23, 1931 | 8 |
| June 15, 1931 | June 26, 1931 | 11 |
| September 15, 1931 | October 1, 1931 | 15 |
| December 15, 1931 | January 23, 1932 | 38 |
| March 15, 1932 | March 19, 1932 | 4 |
| June 15, 1932 | July 1, 1932 | 15 |
| September 15, 1932 | September 23, 1932 | 8 |
| December 15, 1932 | January 6, 1933 | 21 |
| March 15, 1933 | April 5, 1933 | 20 |
| June 15, 1933 | July 8, 1933 | 23" |

It will be observed from the foregoing compilation that premium payments, with the exception of the first, were never made as required by the policy, but were made and *accepted* when overdue from four to thirty-eight days. The contract of insurance made no provision for a period of grace. The final payment was mailed on July 8, 1933, in the form of a money order. The money order was received by defendant on July 11, 1933. On July 12, 1933, one of defendant's officers wrote a letter to the insured with respect to the final delayed premium payment and the consequences of such delay, saying in part: "We are in receipt of money order for $12.00 to apply on the above numbered policy, which we are holding subject to your order and which we will return to you if for any reason you are not reinstated." According to the testimony adduced by defendant, this letter was sent to deceased *prior* to receipt on the same day of a letter dated July 10, 1933, from Wetter & Rankin, attorneys for plaintiffs, located at Red Bluff, California, advising defendant of the insured's death. The postmark on the letter from the attorneys showed that it had been mailed in Red Bluff at 9:00 P. M., July 10th. It was received by defendant at 2:00 P. M. on July 12th. Upon receipt of the Wetter & Rankin letter, defendant replied by mail under date of July 12, 1933, that the Vinther policy had lapsed for nonpayment of premium on July 1, 1933, and enclosed to the attorneys the money order which had been received from the insured on July 11, 1933, and defendant also stated, "In view of the circumstances, please disregard our letter which was mailed to Mr. Vinther earlier in the day re-

garding reinstatement.'' The money order mailed from Proberta, California, and referred to in the letter of defendant to deceased, which was allegedly written before receipt of the letter from the attorneys for plaintiffs, was introduced in evidence and showed an endorsement thereon made by defendant.

 Plaintiffs proceeded on the theory that prompt payment of quarterly premiums had been waived by the conduct of the defendant, and that by reason of said conduct, deceased had been given a reasonable time after due date of the premiums to make payment thereof. The case was tried before a jury, which brought in a verdict for the plaintiffs.

The primary question involved is, whether the facts detailed establish a waiver by the insurer of that clause in its contract of insurance requiring prompt payment. *Nelson* v. *National Guaranty Life Co.*, 131 Cal. App. 669 [21 Pac. (2d) 1022] (hearing denied by Supreme Court), is directly in point. In the Nelson case, speaking with reference to similar facts, the court said at page 672: ''Had defendant, by its course of dealing as shown from the facts stated, waived the forfeiture? The test should be, whether by such conduct, the insured had been led to believe that payment made within a reasonable time after the fifteenth would be received in discharge of the instalment and the policy would continue in force, and had acted accordingly, and that until some notice was given, other and different and more specific than those referred to, the forfeiture would not be insisted upon.

''The theory of defendant is, that as a matter of law, the lapse under the contract was brought about by default of payment and that subsequent receipt of the payment worked a reinstatement. The notices to some extent were worded to create that impression. While the policy provided that if a lapse occurred on the fifteenth the contract was ended and reinstatement could only be had as provided in the policy, as quoted above, yet in the many lapses no reinstatement had been made as required by the policy. Of course, all these provisions are for the benefit of the company and can be waived by it and the fair inference was that as proof of health had never been required, the payments were being accepted as continuation of the policy and not reinstatement. Such understanding by the insured operated as a waiver of all the provisions relating to forfeiture until specific notice should be given.

"The contract, if those forfeiture provisions were waived, was in that class where nonpayment of an instalment would not work a forfeiture, and where the law permits payments to be made until definite notice is given that failure so to do will work a forfeiture. The result of this course of reasoning would seem to be that this contract was in force at the time of death, whether payment was in fact made or not."

Defendant sought to avert the effect of the evidence, which has been summarized, by attempting to prove that on February 27, 1931, it had by letter, with the terms of which deceased had acquiesced, changed the due date of premiums by advancing the date of payment thereof to April 1, 1931, and providing that thereafter premiums were to be paid quarterly on the first of the month for all quarters succeeding April 1, 1931. It is not contended that this letter was ever attached to the policy, or that an approval of the change was endorsed on the policy. The policy itself contained the following provisions:

"Standard Provisions. 1. This policy includes the endorsements and attached papers, if any, and contains the entire contract of insurance. . . . 2. . . . No change in this policy shall be valid, unless approved by an executive officer of the Company, and such approval to be endorsed hereon."

Whether or not the letter of February 27, 1931, which was not found among the effects of the insured, was actually sent, was a question of fact. Whether the terms thereof were ever agreed to by the insured, was also a question of fact. When considered in connection with the provisions of the policy itself and the admitted fact that the insured, in spite of said letter and shortly after the alleged transmittal thereof, did pay, on March 23, 1931, the premium according to the terms of the policy and not the letter, it cannot be said by this court that there was no substantial evidence to sustain the jury's implied finding that the letter was not sent and that, if sent, it was not acquiesced in by the insured. Conceding for the purposes of this case that, in spite of the provisions of the policy requiring endorsement thereon of any change, it could be changed by letter, it is clear on the facts of this case that, whether the letter was sent, and what the decedent did after receipt thereof, if it was sent, were questions of fact. The jury was justified in concluding from the facts that the terms of the policy with reference to payment date of premiums were

not changed. Furthermore, as has been undoubtedly observed, even though defendant's theory as to the policy change by letter were adopted, the evidence shows that on three different occasions the defendant accepted late payments on its own theory of what the due date was, two of which were the quarterly payments immediately preceding the last one. Even under such comparatively limited circumstances, the doctrine announced in *Nelson* v. *National Guaranty Life Co.,* *supra,* would apply, and, in our opinion, a court or jury upon evidence merely of the last two consecutive delinquencies without protest by defendant would be justified in finding a waiver of the prompt payment clause. We find no prejudicial error in the instructions given, or in the failure of the court to direct a verdict, or to give five of the instructions requested by the defendant. ■ Each of such five instructions assumed as facts controverted matters and were, in fact, requests for a directed verdict in defendant's favor. Each was properly refused. (*Bellon* v. *Silver Gate Theatres, Inc.,* 4 Cal. (2d) 1 [47 Pac. (2d) 462, 469]; *Tucker* v. *San Francisco,* 111 Cal. App. 720 [296 Pac. 101].)

The judgment is affirmed.

York, Acting P. J., and Doran, J., concurred.