[Civ. No. S. C. 5.   Second Appellate District, Division One.—December 24, 1936.]

JOHN HUBER, Respondent, v. NEW YORK LIFE INSURANCE COMPANY (a Corporation), Appellant.

Meserve, Mumper, Hughes & Robertson and Roy L. Herndon for Appellant.

Cannon & Callister and David H. Cannon for Respondent.

WHITE, J., *pro tem.*—This is an appeal from a judgment in favor of plaintiff in an action upon a policy of life insurance in which plaintiff seeks to recover the total disability benefits provided to be paid by the terms of the policy in question. Defendant insurance company pleaded as affirmative defenses that the policy had lapsed for nonpayment of a premium when due, or within the period of grace; that plaintiff had filed an application for reinstatement of said policy, which application contained false and fraudulent statements with reference to plaintiff's health and insurability; that in reliance upon said false and fraudulent representations defendant insurance company reinstated said policy; but that upon learning of the fraud within two years from the date of reinstatement, defendant insurance company had rescinded the reinstatement of said policy by notifying all interested parties and tendering return of all premiums paid from and after the date of reinstatement. There was also filed by the company a cross-complaint seeking judicial confirmation of its rescission of the reinstatement, which cross-complaint was based substantially upon the claims aforesaid. Plaintiff's answer to the cross-complaint denied lapsation of the policy for nonpayment of the premium, alleging that the premium in question had been paid before the expiration of the grace period; admitted the signing and filing of the application for reinstatement; denied that any false or fraudulent representations were contained in said application; and admitted receipt of the letter of rescission tendering

return of the premiums from the insurance company. With the issues thus framed, the cause was tried by the court, sitting without a jury, resulting in judgment for plaintiff.

The policy in question was dated and issued by appellant insurance company to respondent July 7, 1930, and provided for a payment to the insured of $100 per month upon due proof that insured was totally and presumably permanently disabled. A premium on this policy fell due April 7, 1932, and the period of grace for the payment thereof expired May 8, 1932. The record contains evidence, in the form of testimony of respondent's wife, that she personally paid this premium at the office of Kast & Sims in Los Angeles, and that she had previously paid premiums on this and other policies to Kast & Sims in the same manner. She testified that she dealt with a Miss Gordon in Kast & Sims' office, who had died prior to the date of the trial. Mrs. Huber further testified that a day or two after the payment of the premium in question to Miss Gordon she received a telephone call from the latter, advising that she (Miss Gordon) had failed to get the money down to the company office in time, as a result of which the policy had lapsed, and that an application for reinstatement would have to be signed. It appears that such an application was mailed to respondent insured, who signed the same and delivered it to Miss Gordon some five or six days subsequent to the payment of the premium money. The policy of insurance contains the following provision: "Payment of Premiums.—All premiums are payable on or before their due date at the Home Office of the Company or to an authorized agent of the Company, but only in exchange for the Company's official premium receipt signed by the President, a Vice-President, a Second Vice-President, a Secretary or the Treasurer of the Company, and countersigned by the person receiving the premium. No person has any authority to collect a premium unless he then holds said official premium receipt."

At the time Mrs. Huber paid the premium money to Miss Gordon, the former did not receive an "official premium receipt", but was given what Mrs. Huber in her testimony described as a "sort of temporary receipt". The premium due April 7th, for payment of which the grace period expired May 8, 1932, together with the aforesaid application for reinstatement, was received at the office of "South Pacific

Clearing House'', a branch office of appellant insurance company, authorized to receive premium payments and to issue official premium receipts therefor, on May 13, 1932, some four days after the period of grace for the premium payment had expired, and the reinstatement application was approved on May 14, 1932. On September 12, 1932, respondent filed his claim for disability benefits, claiming that his total disability began on May 12, 1932, due to illness and nervous breakdown.

The trial court found that respondent insured had performed and fully complied with all the terms and conditions of the policy; that the policy had never lapsed; by reason of which respondent was entitled to all the benefits accruing to him under the policy. The court specifically found that respondent did pay the premium due April 7, 1932, within the grace period allowed by the terms of the policy, and that by reason thereof the policy never lapsed and no reinstatement thereof was ''necessary, required, nor possible''.

Appellant assails these findings as wholly unsustained by any evidence and as being contrary to law. With great earnestness it is argued that, assuming the premium payment was made to Kast & Sims prior to the expiration of the grace period, nevertheless Kast & Sims had no actual authority to receive the payment, nor did they possess any apparent or ostensible authority to bind the appellant insurance company; and that respondent insured was charged with knowledge of the limitations upon the authority of these agents. In other words, it is appellant's contention that in delivering the premium to Kast & Sims respondent insured made them his agent, and that until they had delivered the premium to the home office of appellant company, or to an authorized agent of the company, and had obtained an ''official premium receipt'', authoritatively signed, the terms of the policy as to payment were not satisfied and appellant was not bound thereby. In support of its contention that respondent was charged with knowledge, appellant insurance company directs our attention to that portion of the record which discloses the fact to be that four times each year, prior to the due date of each premium payment, respondent received a notice admonishing him that payment must be made to the cashier of the company's South Pacific clearing office. Commercial Exchange Building, second floor, 416 West

Eighth Street, Los Angeles, or to the premium cashier at the home office, during certain hours of the day, and that unless payment should be made to the company or other duly appointed agent or person authorized to collect it on or before the day upon which it became due, all payments thereon would become forfeited and void, subject to such rights as the period of grace or the right to nonforfeiture benefits vested in the insured. Said notice also advised the insured that payment should be made only in exchange for the company's official premium receipt, signed by the president and countersigned by the person to whom payment was made.

A long line of authorities seems to sustain the view that an insured, after he has accepted a policy giving powers to an agent to collect renewal premiums only upon a receipt furnished and signed by the general officers and countersigned by the agent, written in the face of the policy, has notice that the agent's power in collecting is limited. Ordinarily he cannot rely on the assumption of the agent to act without being in possession of the proper receipt, because apparent authority cannot be established by the statements or conduct of the agent, and the principal is liable only for that appearance of authority caused by himself. (*Fisk* v. *Liverpool etc. Co.,* 198 Mich. 270 [164 N. W. 522]; *Maryland Casualty Co.* v. *Moon,* 231 Mich. 56 [203 N. W. 885].) If the insured has made payments to an agent without such receipt he will be required to show a waiver by the insurer or estoppel upon it to deny such powers in the agent. (*Kansas City Life Ins. Co.* v. *Elmore,* (Tex. Civ. App.) 226 S. W. 709.) The authority must also have been actually apparent to the third person or insured, who, in order to avail himself of the rights thereunder, must have dealt with the agent in reliance thereon, in good faith and in the exercise of reasonable prudence. (*Marx* v. *King,* 162 Mich. 258 [127 N. W. 341, 344]; *Clark* v. *Dillman,* 108 Mich. 625 [66 N. W. 570].)

Measured by these rules, let us refer to the evidence to ascertain whether all the required elements of waiver or estoppel were present in the instant case.

The record indicates that respondent's premiums had been regularly paid through the office of Kast & Sims, and that no objection had ever been made thereto by appellant company. It is also in evidence that appellant maintained its offices at 416 West Eighth Street in the city of Los Angeles.

On the door of room 207 of said building was inscribed, "New York Life, South Pacific Clearing House, H. H. Wahrmund, Cashier," and on the door of room 300, where Kast & Sims maintained their offices, was inscribed the following lettering: "New York Life, Los Angeles Branch, Cashier's Department." The record indicates that when premiums were paid through Kast & Sims the latter would take the money to room 207, where the official premium receipts were kept, obtain a receipt and return the same to the insured, or would take the person making the payment down to room 207. The record further indicates that the forms of application for reinstatement of lapsed policies were in the possession of only four offices of appellant company in Los Angeles, and one of those offices was Kast & Sims'.

It seems to us that the constant and frequent receipt by appellant without objection of premiums paid through Kast & Sims and the issuance by appellant of the official premium receipt when payment was made to Kast & Sims, coupled with appellant's conduct in permitting Kast & Sims to occupy space in the office of appellant company, clearly indicates that Kast & Sims were more than "soliciting agents", or "special agents", as they are characterized by appellant. To our minds, the conduct of appellant insurance company herein clearly contained all the elements necessary to estop it from denying the authority of Kast & Sims to accept premium payments for and on behalf of the company. ▮ Courts are disposed to seize upon slight circumstances to prevent a forfeiture. In the absence of fraud, where a party makes an effort to transmit his premium in time, it seems to us that substantial objection should be required to defeat it as a payment when there are acts or conduct on the part of the insurance company which would induce the insured to omit to follow the strict letter of the policy; and we think that that which occurred before as well as after the payment may be looked to on the question of waiver or estoppel as to the manner of payment. In the instant case the policy was issued July 7, 1930. No question of any kind was made by the insurance company and no notice of any nature had ever been received from appellant or from anyone else that the premiums on this policy should not be paid to Kast & Sims, until the letter of October 1, 1932, a period of two years, two months and twenty-four days after the policy was issued,

and which was also a date subsequent to the time when respondent filed his claim for benefits under the disability provisions of his policy.

We conclude that the evidence amply supports the findings of the trial court that the premiums were regularly and duly paid by respondent in accordance with the terms of the policy, and that the policy had not lapsed, and that by reason of the fact that there never was a lapsation there was no occasion or requirement for the filing of an application for reinstatement. This conclusion upon our part makes it unnecessary to discuss or decide other points raised on this appeal.

For the foregoing reasons the judgment appealed from is affirmed.

York, Acting P. J., and Doran, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on February 18, 1937.