[Civ. No. 12635.   First Dist., Div. Two.   July 14, 1944.]

BERNICE TAYLOR GLEED et al., Respondents, v. THE LINCOLN NATIONAL LIFE INSURANCE COMPANY (a Corporation), Appellant.

Keesling, Wayland & Keil and Keesling & Keil for Appellant.

Downey, Brand & Seymour, H. Harold Leavey and Lawrence G. Dorety as Amici Curiae on behalf of Appellant.

Nathan G. Gray for Respondents.

NOURSE, P. J.—In a trial by jury the plaintiffs had a verdict for the sum of $3,000 based upon a policy of insurance on the life of F. C. Gleed, deceased. The plaintiff Gleed was the widow and the plaintiff Boggs was an assignee of deceased.

The appeal from the judgment is based upon the ground that the policy lapsed prior to the death of the insured because of nonpayment of the premium then due. The respondents defend the judgment on the ground that the time and manner of payment under the strict terms of the policy was waived, and that defendant is estopped from contesting the policy on that ground.

The contested policy was issued on May 12, 1936, through one Hansen, a duly authorized soliciting agent, and by him delivered to the insured. Thereafter, until the death of the insured, Mrs. Boggs paid all the premiums to Hansen—sometimes in cash and sometimes by her personal check. For each payment Mrs. Boggs received a receipt signed "Edward F. Hansen, Agent" and containing the policy number and the amount received. On June 12, 1942, in accordance with her

usual custom, Mrs. Boggs gave to Hansen her check drawn in his name to cover the premium due on May 12, 1942. Hansen deposited the check in his own bank and drew his check in favor of appellant which was deposited for collection by appellant and returned unpaid because of insufficient funds in the Hansen account. On June 18th the appellant notified Hansen that his check had been dishonored, and that the company would hold it until it received a new remittance. On the same day appellant mailed a letter to the insured advising him that the policy had lapsed and requesting an application for reinstatement. The insured died early the following morning and this letter was found unopened in his home.

Appellant now contends that Hansen was not its agent, but that he was acting in the capacity of broker only for Mrs. Boggs, that the express terms of the policy permitted payments of premiums to be made "to an authorized agent of the Company only in exchange for the Company's receipt therefore signed by the President or the Secretary," that the check of Hansen was received for collection only, and did not constitute a payment of the premium. In the opening brief the appellant states: "From the facts in the instant case it is clear that no payment was made to the insurance company by the insured or his assignee in the manner specifically set forth in the policy for the payment of premiums, and that in the absence of a specific waiver of this provision of the policy, the policy lapsed on May 12, 1942, for non-payment of premium." Respondents concede the statement as to the manner in which payments of premiums were made, but defend the judgment upon the ground that the appellant waived these terms of the policy and is estopped to deny that Hansen was its authorized agent to collect and receipt for the premiums as paid.

On the issue of waiver and estoppel the evidence is that for a period of six years all premiums had been paid by Mrs. Boggs to Hansen, either in cash or by her personal check, and that no one of these payments was exchanged for the company's receipt signed by the president or secretary as required in the policy. It is also in evidence that each and all of these payments were made in this manner while the insured was in default, and in many cases after the period

of grace had expired. During this period of six years eighteen separate premiums became due. Fourteen of these were accepted by appellant after the period of grace had expired. In only one instance—September, 1940—the appellant demanded and received an application for reinstatement.

The appellant directs attention to the testimony of its cashier relative to the date of mailing of these remittances from Hansen. Called under section 2055 of the Code of Civil Procedure this witness testified from records of the office covering the date when "premium was paid" or "premium was received" over the six-year period. On cross-examination by the appellant this witness testified that he personally inspected each one of the envelopes containing these remittances and knew that they all bore postmarks which were prior to the expiration of the grace period. The jury was at liberty to accept or reject this testimony based upon the witness's recollection of events occurring during a period of six years. And it was at liberty to accept or reject the positive testimony of the same witness, based upon the books of the company, showing when "payment" was made. The appellant vigorously contends that, since it is the common practice of insurance companies generally to treat premiums which are placed in the mail "as being paid within the grace period" provided the envelope of enclosure is stamped within such period, we should hold as matter of law that no one of these payments was in default. But if such is the common practice the record here casts doubt as to whether it was followed in this instance. The appellant's books show that the premiums were "paid" after the expiration of the grace period. These books are the only documentary evidence showing the date of payment. The envelopes bearing the postmarks have all been destroyed. If the custom had been followed and "payment" was acknowledged as of the date of mailing, the inquiry rises why the insured was not credited as having "paid" the premiums within time rather than having been charged on the books as being in default. However, the conflict in the evidence is apparent, and the jury's verdict cannot be disturbed on that ground.

Respondents also argue that the appellant is estopped to deny the authority of Hansen as its agent to accept payments of premiums within the grace period. At the special

request of appellant, Hansen was licensed by the State Insurance Commissioner to "act as its agent," and, for the full period he collected from the insured every premium that accrued. All these premiums were paid by Mrs. Boggs, as assignee of the insured. Some were paid in cash and some by check. All were made on the last day of grace, or the day before. In some instances Hansen mailed his check to appellant on the last day of grace. It was a fair inference for the jury to draw that during the entire period the appellant held out to the respondents that Hansen was its agent for all purposes and that payment of premium made to him within the grace period would be treated as payment within the terms of the policy.

In *Huber* v. *New York Life Ins. Co.*, 18 Cal.App.2d 269, 274 [63 P.2d 318], which is a case similar to this in many respects, the District Court of Appeal said: "In the absence of fraud, where a party makes an effort to transmit his premium in time, it seems to us that substantial objection should be required to defeat it as a payment when there are acts or conduct on the part of the insurance company which would induce the insured to omit to follow the strict letter of the policy. . . ."

In *Page* v. *Washington Mut. Life Assn.*, 20 Cal.2d 234, 239 [125 P.2d 20], the Supreme Court said: "It is clear that a past course of conduct of acceptance by the insurer of payments of premiums after the grace period may establish a waiver by the insurer of the right to declare a forfeiture for failure to pay premiums exactly at the stipulated time, or the insurer may be said to be estopped to assert the forfeiture where the insured may be said to have been reasonably led to believe that payments made within a reasonable time after the grace period would be acceptable. (*Nelson* v. *National Guaranty Life Co.*, 131 Cal.App. 669 [21 P.2d 1022]; *Vinther* v. *Sunset Mut. Life Ins. Co.*, 11 Cal.App.2d 118 [53 P.2d 182]; *Turner* v. *Redwood Mutual Life Assn.*, 13 Cal.App.2d 573 [57 P.2d 222].)" To the same effect is *Bryson* v. *National Travelers Cas. Co.*, 206 Cal. 475, 479 [274 P. 957].

Upon these authorities we conclude that the course of conduct in relation to the payments of premiums running over a period of six years was such that the respondents were entitled to assume that the terms of the policy need not be

adhered to strictly, and that the appellant was estopped from insisting upon a strict compliance with those terms until it had given the respondents reasonable notice of its change in policy.

The judgment is affirmed.

Sturtevant, J., and Spence, J., concurred.

A petition for a rehearing was denied August 12, 1944, and appellant's petition for a hearing by the Supreme Court was denied September 11, 1944.