[Civ. No. 3420. Fourth Dist. Sept. 24, 1946.]

JACK R. LINCKE, Respondent, v. MUTUAL BENEFIT HEALTH AND ACCIDENT ASSOCIATION (a Corporation), Appellant.

J. Edward Haley for Appellant.

George R. Maury for Respondent.

MARKS, J.—This is an appeal by defendant from a judgment in the sum of $1,661.59 on a health and accident policy of insurance issued to Mabel R. Medin, the mother of plaintiff. Plaintiff was named as the beneficiary in the policy.

Mrs. Medin was killed in an automobile accident on July 2, 1942. Defendant maintains that the policy lapsed on July 1, 1942, because of the nonpayment of the premium. Plaintiff argues that the insurer had waived strict compliance with the terms of the contract in respect to the payment of premiums when due (if a due date could be determined) by accepting the premiums after they were due over a period of years and therefore is estopped to assert that the policy had lapsed. The books of the insurer show only three premiums paid on time between the one due on February 1, 1939, paid February 7, 1939, and the one due on April 1, 1942, and paid on that date. The other payments were made from three to 20 days late. Except in one instance no application for reinstatement of the policy was requested by the insurer prior to the death of the insured and no notice of forfeiture nor a requirement of prompt payment of premiums was given.

The policy was dated October 7, 1937, and an annual premium was paid for the first year. Thereafter premiums were paid for quarterly periods, except five made in 1940 on a monthly basis, in accordance with an option contained in a rider dated June 13, 1940. From the official receipts in the record we might assume the policy was delivered and went into effect on November 1, 1937, were it not for the finding "that at all times since that time (October 7, 1937) to and including the 2nd day of July, 1942, said policy of insurance has been in full force and effect," there being no evidence of the date of delivery other than the date of the policy. (See Civ. Code, §§ 1627, 1055.) In its opening brief appellant admits the policy "became effective October 7, 1937."

The premium for the first year was $39.50. Under the heading in the policy, "Premium Reduction Feature," we find the following: "The Association will undertake to reduce the amount of the second and subsequent annual renewal premiums not to exceed the amount of $10.50, at the time the annual renewal premium is due and paid."

Under the heading, "Additional Provisions," the following appears:

"(b) Strict compliance on the part of the Insured and beneficiary with all of the provisions and agreements of this policy, and the application signed by the Insured, is a condition precedent to recovery and any failure in this respect shall forfeit to the Association all right to any indemnity.

"(c) The term of this policy begins at 12 o'clock noon, Standard Time, on date of delivery to and acceptance by the Insured against accident and on the thirty-first day thereafter against disease and ends at 12 o'clock noon on date any renewal is due. . . .

"This policy may be renewed from term to term by the payment in advance, and acceptance by the Association, of the stipulated premium. The mailing of notice to the Insured at least fifteen days prior to the due date shall constitute legal notice of dues, and should the premium provided for herein be insufficient to meet the requirements of the Association, it may call for an additional premium."

In the "Standard Provisions" of the policy is the following:

"3. If default be made in the payment of the agreed premium for this policy, the subsequent acceptance of the premium by the Association or by any of its duly authorized agents shall reinstate the policy, but only to cover accidental injury thereafter sustained and such sickness as may begin more than ten days after the date of such acceptance."

We are pointed to no provision of the policy permitting payment of premiums quarterly, but as they were paid and accepted on that basis during the greater part of the life of the policy, we assume it was based on some mutual agreement as no question was raised by either party. Nor is there anything to indicate the amount of the quarterly premiums except the fact that $7.75 was paid by the insured and accepted by the association each quarter, except during the time when the annual and monthly payments were made.

It appears that, except during the time that monthly pay-

ments were made, defendants regularly sent Mrs. Medin notices of the due date of the next premium as such date was construed by it. The first in point of time contains the number of the policy followed by the figures "7.75" and the name and address of the insured together with certain numbers. Then follows, "Notice of Premium Due Jan. 1, 1941. There is no grace period. Pay this premium to Mr. E. S. Hall, Res. Vice-President," followed by his address and instructions as to the method of payment. Other notices are in similar form, except as to dates.

The receipts for premiums paid are similar in form (except as to the different dates) and contain the following:

"Payment of this premium receipted for, if made on or before the date to which premiums have already been paid, keeps your policy in continuous effect, and if made after that date, reinstates the policy on date of this receipt, as provided in policy, until 12 o'clock noon, standard time, 11-1-38, at which time another premium will be due."

Defendant did not learn of the death of Mrs. Medin until early in September, 1942. Two letters from it were found among her effects. The first letter, dated July 17, 1942, contained the salutation, "Dear Policyholder" and the following:

"Until you pay the premium that was due the first of this month, your policy with us cannot give you the protection you need, or provide an emergency income in case of disability. . . . Just sign the enclosed reinstatement slip and return it with the premium shown."

Attached to the letter was an application for reinstatement showing a premium due of $7.75 and which contained the following:

"Not having received your payment due July 1, 1942, as per our notice, your insurance is in suspension until your payment is received and accepted at the Association's office as provided by the policy. Kindly fill out the blank on the opposite side and return it with your payment at once when your reinstatement will have IMMEDIATE ATTENTION."

The second letter was dated July 31, 1942. It also contained the salutation, "Dear Policyholder" and urged Mrs. Medin to "complete and return the attached slip with your remittance today." The slip was a "SPECIAL Application for Reinstatement" and on the back, printed in bold type

was the following: "Payment of Regular Premium Covers ALL COSTS to December 1, 1942," thus apparently waiving payment of the premium for July and offering to extend the insurance for four months instead of the usual three if the $7.75 was paid before September 12, 1942. Of course, as Mrs. Medin was dead she could not accept the offer.

It is clear from these letters that defendant did not regard the policy forfeited and cancelled and all rights under it terminated by reason of the failure to pay the premium due on July 1, 1942. The salutation, "Dear Policyholder" is significant.

In *Page* v. *Washington Mutual Life Assn.*, 20 Cal.2d 234 [125 P.2d 20], the defendant maintained that the policy of life insurance had lapsed by reason of nonpayment of premiums when due. The court said:

"The court found that the policy had not lapsed and that strict performance with respect to time of payment of premiums had been waived. Appellant contends the policy lapsed for failure to pay premiums.

"The general principles with relation to forfeiture of the benefits under insurance policies have been recently stated by this court. Forfeitures, particularly in insurance contracts, are not favored. (*Bittinger* v. *New York Life Ins. Co.*, 17 Cal.2d 834 [112 P.2d 621].) And if reasonably possible in light of the circumstances, the courts will determine that a forfeiture has not occurred or that a waiver or estoppel exists. (*Knarston* v. *Manhattan Life Ins. Co.*, 124 Cal. 74 [56 P. 773]; *Huber* v. *New York Life Ins. Co.*, 18 Cal.App.2d 269 [63 P.2d 318].)

". . . It is clear that a past course of conduct of acceptance by the insurer of payments of premiums after the grace period may establish a waiver by the insurer of the right to declare a forfeiture for failure to pay premiums exactly at the stipulated time, or the insurer may be said to be estopped to assert the forfeiture where the insured may be said to have been reasonably led to believe that payments made within a reasonable time after the grace period would be acceptable. (*Nelson* v. *National Guaranty Life Co.*, 131 Cal.App. 669 [21 P.2d 1022]; *Vinther* v. *Sunset Mut. Life Ins. Co.*, 11 Cal.App.2d 118 [53 P.2d 182]; *Turner* v. *Redwood Mutual Life Assn.*, 13 Cal.App.2d 573 [57 P.2d 222].) . . ."

The insurer sought to collect the premium after default. The court continued:

"That communication may fairly be said to have been the commencement of negotiations with reference to his policy and the payment of premiums. The rule is thus stated in *Spiegelman* v. *Metropolitan L. Ins. Co.*, 21 Cal.App.2d 299, 301 [68 P.2d 1006]:

" 'Nevertheless, it is well settled that when an insurance company, after knowledge of any default for which it might terminate a policy, enters into negotiations which recognize its continued validity, the right to claim a forfeiture for such default is waived; and a waiver may be implied from the acts of the parties. (*Murray* v. *Home etc. Assn.*, 90 Cal. 402 [27 P. 309, 25 Am.St.Rep. 133]; *Knarston* v. *Manhattan Life Ins. Co.*, 124 Cal. 74 [56 P. 773]; *Faris* v. *American etc. Co.*, 44 Cal.App. 48 [185 P. 1035].)' (See, also, *Bryson* v. *National Travelers Cas. Co.*, 206 Cal. 475 [274 P. 957].)"

As we have observed, the trial court found the policy in full force and effect from its date to and including July 2, 1942. Defendant argues that this finding is contrary to the terms of the policy already quoted, which it maintains resulted in the policy lapsing and becoming ineffective during the period in which a premium remained unpaid. In speaking on a similar question in *Kennedy* v. *Occidental Life Ins. Co.*, 18 Cal.2d 627 [117 P.2d 3], the Supreme Court held:

"By the terms of the policy the insured is given a right to reinstatement after lapse upon compliance with certain conditions. During the period in which reinstatement is possible the policy is not void but merely suspended. The right to revive the policy by reinstatement is a valuable contractual right, the consideration for which is found in the premium paid and to be paid under the original policy, and the insurer has no arbitrary or discretionary right to refuse reinstatement if all the conditions therefor have been complied with."

The trial court found in detail the several dates on which premiums became due under the terms of the policy, commencing with February 1, 1939, and the exact dates on which payments had been made which, except in three instances, were made and were accepted without objection or comment after the due dates. It was further found:

"That as a direct result, and by reason of such conduct and

acquiescence in the late payment of said quarterly and monthly premiums on the part of said defendant, said Mabel R. Medin and plaintiff and each of them relied thereon and were led to believe and did believe that strict compliance as to time of payment of premiums had been waived and payment of said quarterly and monthly premiums had been waived and payment of said quarterly and monthly premiums made within a reasonable time after the due date as fixed by said policy would be received in payment of said quarterly and monthly premiums and that said policy would remain in full force and effect until at least notice was given by defendant and received by said Mabel R. Medin and plaintiff requiring strict compliance with the terms of said policy of insurance. That no such notice requiring strict compliance as to time of premium payments was ever given by defendant or received by said insured or plaintiff."

The case of *Vinther* v. *Sunset Mutual Life Ins. Co.*, 11 Cal.App.2d 118 [53 P.2d 182], involved liability under a health and accident policy which made no provision for a period of grace and under which payments of all premiums except the first had been made when overdue from four to 48 days. In holding the insurer liable on the policy it was said:

"The primary question involved is, whether the facts detailed establish a waiver by the insurer of that clause in its contract of insurance requiring prompt payment. *Nelson* v. *National Guaranty Life Co.*, 131 Cal.App. 669 [21 P.2d 1022] (hearing denied by Supreme Court), is directly in point. In the Nelson case, speaking with reference to similar facts, the court said at page 672: 'Had defendant, by its course of dealing as shown from the facts stated, waived the forfeiture? The test should be, whether by such conduct, the insured had been led to believe that payment made within a reasonable time after the fifteenth would be received in discharge of the instalment and the policy would continue in force, and had acted accordingly, and that until some notice was given, other and different and more specific than those referred to, the forfeiture would not be insisted upon.

" 'The theory of defendant is, that as a matter of law, the lapse under the contract was brought about by default of payment and that subsequent receipt of the payment worked a reinstatement. The notices to some extent were worded to create that impression. While the policy provided that if a

lapse occurred on the fifteenth the contract was ended and reinstatement could only be had as provided in the policy, as quoted above, yet in the many lapses no reinstatement had been made as required by the policy. Of course, all these provisions are for the benefit of the company and can be waived by it and the fair inference was that as proof of health had never been required, the payments were being accepted as continuation of the policy and not reinstatement. Such understanding by the insured operated as a waiver of all the provisions relating to forfeiture until specific notice should be given.

" 'The contract, if those forfeiture provisions were waived, was in that class where nonpayment of an instalment would not work a forfeiture, and where the law permits payments to be made until definite notice is given that failure so to do will work a forfeiture. The result of this course of reasoning would seem to be that this contract was in force at the time of death, whether payment was in fact made or not.' " (See, also, *Page* v. *Washington Mutual Life Assn., supra; Turner* v. *Redwood Mutual Life Assn.*, 13 Cal.App.2d 573 [57 P.2d 222]; *Gleed* v. *Lincoln National Life Ins. Co.*, 65 Cal.App.2d 213 [150 P.2d 484].)

Defendant cites and relies on the following authorities as supporting its contention that the policy had lapsed and had become ineffective under its terms by reason of the failure to pay the premium due on July 1, 1942: *Goldstone* v. *Columbia Life etc. Co.*, 33 Cal.App. 119 [164 P. 416]; *Boyer* v. *United States F. & G. Co.*, 206 Cal. 273 [274 P. 57]; *Methvin* v. *Fidelity Mutual Life Assn.*, 129 Cal. 251 [61 P. 1112]; *Blackburn* v. *Home Life Ins. Co.*, 19 Cal.2d 226 [120 P.2d 31]; *Jackson* v. *Washington Nat'l Ins. Co.*, 18 Cal.App.2d 254 [56 P.2d 1264]; *Carabelli* v. *Mountain States Life Ins. Co.*, 8 Cal.App.2d 115 [46 P.2d 1004]; *Frysh* v. *Commercial Casualty Ins. Co., of Newark, N. J.*, 214 Wis. 453 [253 N.W. 184]; *Capeheart* v. *Mutual Benefit Health & Accident Assn.*, 111 W.Va. 317 [161 S.E. 609]; *Smith* v. *Masscahusetts Accident Co.*, 143 Misc. 227 [256 N.Y.S. 255]; *Richardson* v. *American National Ins. Co.*, 18 La.App. 468 [137 So. 370]; *Denton* v. *Provident Ins. & Acc. Co.*, 238 Ky. 26 [36 S.W.2d 657].)

The majority of the California cases cited hold that the parties to an insurance policy may agree on the terms of their

contract, subject to statutory limitations, and that the "contract is to be interpreted according to the intention of the parties as expressed in the instrument." (*Blackburn* v. *Home Life Ins. Co., supra*) and do not involve the question of waiver which confronts us here.

*Carabelli* v. *Mountain States Life Ins. Co., supra,* is to the same effect and also holds that "the rule of liberal construction in favor of the insured can only have application when the policy presents some uncertainty or ambiguity." The policy before us presents uncertainties. The amounts of the quarterly premiums and the dates to which payment of such premiums would extend the insurance cannot be determined from the policy. We have gleaned a majority of the facts we have stated on this subject from the notices and receipts found in the effects of the insured and not from the policy. Further, if, as admitted by defendant, the policy went into effect on October 7, 1937, then subsequent premiums fell due on the seventh and not on the first of succeeding months as was assumed by both the insurer and the insured. There are sufficient uncertainties in the contract to permit the application here of the rule of liberal construction in favor of the insured.

The Carabelli case involved an accident policy which was held to have lapsed because of nonpayment of a premium. A reading of that case demonstrates the differences in the two contracts of insurance so that it cannot be controlling here.

There seems to be no need to extend this opinion by reviewing the cases cited from other jurisdictions as the rule that an insurer may waive the terms of a policy inserted for its benefit seems to be established here.

We have concluded that the finding of such waiver in the instant case is sustained by the record and is controlling.

■ Defendant points to a paragraph of the policy which requires immediate notice of the death of the insured and another which provides in part that "Failure to give notice within the time provided in this policy shall not invalidate any claim if it shall be shown not to have been reasonably possible to give such notice and that notice was given as soon as was reasonably possible." As the insurer did not receive notice of the death of the insured until more than two months had passed, it is argued that the claim of the beneficiary is barred.

There is evidence in the record upon which the trial judge

found that the notice of death was given as soon as was reasonably possible. Further, as defendant denied all liability under the policy it "waived these conditions relating to time of notice and to proof of the disability. (*Dietlin* v. *General American Life Ins. Co.*, 4 Cal.2d 336, 350 [49 P.2d 590].)" (*Trousdell* v. *Equitable Life Assurance Society*, 55 Cal.App. 2d 74 [130 P.2d 173].)

The judgment is affirmed.

Griffin, Acting P. J., concurred.