**Olive Mae BUCHANAN, Plaintiff,**

**v.**

**The EQUITABLE LIFE ASSURANCE SOCIETY OF THE UNITED STATES, Defendant.**

**Civ. No. 7567.**

United States District Court
N. D. California, N. D.

Dec. 2, 1958.

Carl Kuchman, Sacramento, Cal., for plaintiff.

Devlin, Diepenbrock & Wulff, Sacramento, Cal., for defendant.

HALBERT, District Judge.

Olive Mae Buchanan (hereinafter referred to as plaintiff), the named beneficiary in a policy of life insurance issued to her husband, Russell L. Buchanan, instituted this action in a State court against the Equitable Life Assurance Society of the United States (hereinafter referred to as defendant) seeking to recover the "face amount" of said policy. Defendant, properly, caused the action to be removed to this Court, Federal jurisdiction being grounded upon the provisions of Title 28 U.S.C.A. § 1332(a)(1).

The controversy between the parties revolves around the legal effect, if any, to be given to said life insurance policy. While there is no substantial difference between the parties insofar as the facts of the case are concerned, there is a very considerable dispute as to the legal effect of these facts. Defendant contends that the policy lapsed due to nonpayment of a premium which was due prior to the death of the insured,[1] while plaintiff takes the position that the facts of the case are such as to estop defendant from raising that defense.

From the evidence adduced at the trial of this case, it appears that during the first part of March, 1955, one Sims, acting in his capacity as sales manager for the Bowman Construction Company, called on plaintiff at her home and asked if plaintiff and her husband had considered constructing a commercial building on certain vacant land owned by them. Plaintiff replied that it had been considered, but that no workable scheme for financing the project had been found. With Sims at the time was defendant's agent, Cottrell, who stated that the necessary loan might be arranged through defendant. An appointment was then made for that evening when Russell Buchanan would be home.

Sims and Cottrell kept the appointment and informed the Buchanans that the construction could be done by the Bowman Construction Company, at an estimated total cost of $20,000, and that financing for that amount could be had from defendant. Cottrell then told the Buchanans that, in order to make certain that the loan would be granted, it would be necessary for Mr. Buchanan to take out a life insurance policy in the amount of the proposed construction loan. Cottrell stated that if this were done, the loan could be granted and construction would commence within ninety days. The Buchanans agreed to the proposition, and gave Cottrell a check to cover the premiums, which he represented would accrue during the pendency of the construction loan.

Later in that same month, Mr. Buchanan having passed his medical examination and an adjustable whole life policy having been issued by defendant, Sims and Cottrell returned to the Buchanan's home. Cottrell then stated that the initial payment had not been sufficient to cover the premiums due during the interim period, and received another check from the Buchanans. Cottrell also stated that should the need arise, he could be reached at the offices of the Bowman Construction Company. Cottrell stated further that in reality it would not be necessary for them to look for him as he, Cottrell, would continue to return and collect any further premiums which might become due.

Relying on Cottrell's representation that financing would be made available, and that construction would start within ninety days, the Buchanans deposited $200 with the Bowman Construction Company, and that firm's resident architect began working on the plans and specifications for the proposed building.

Matters continued along in that fashion, with only an occasional visit by the Buchanans to the Bowman Construction Company to inspect the plans and specifi-

1. In its answer, defendant also alleged the right to avoid the policy as a result of misrepresentations made in the application. As this defense was not pressed further, it will be considered abandoned.

cations. On August 1, 1955, the Buchanans received a notice from defendant, stating that the policy had lapsed on July 28, 1955, because a premium due had not been paid. The notice stated, further, that if the past due premium was received by " * * * the cashier named below," before a date not here important, the policy would be reinstated, provided death did not occur before payment was received. While a space was provided for the name and address of the cashier, that space was in fact blank on the notice received by the Buchanans.

Confronted with this notice, which failed to provide them with the name or address of the referred to cashier, the Buchanans drew a check for the amount indicated as due on the lapse notice, and proceeded to the offices of the Bowman Construction Company to consult with Cottrell and, if necessary, to make the payment demanded. Cottrell was not at the office when the Buchanans called. Sims, who was present, stated that he could not assist the Buchanans in that particular matter, but he did agree to arrange an appointment with Cottrell. Unable to do more, the Buchanans returned to their home where Russell Buchanan died suddenly on the following day.

In defense of this suit, defendant relies solely on the letter of the policy, wherein is a requirement that all premiums be duly paid before payment on the policy may be required. In response to plaintiff's contention that defendant, as his principal, is bound by Cottrell's representations that no further premium would be due until such time as the construction loan had been granted, defendant points to the clause in both the application and the policy which restricts the power to waive or modify the terms of the insurance contract to certain officers of defendant, among whom Cottrell was not included. In similar vein, defendant relies on that portion of the policy which requires that all premiums be paid at the home office, or to an authorized cashier, in exchange for a receipt signed by certain specified officers

of defendant and countersigned by a cashier, to countervail Cottrell's representation that, should further premiums become due, he would call on the Buchanans and collect them.

While it is clear from the facts recited above that the letter of the policy was not met, it is also unmistakably clear that this failure was occasioned by the actions and representations of Cottrell, aggravated by defendant's error in not providing plaintiff with the name and address of the cashier to whom payment could be made. Under the circumstances, the sole legal issue of this case resolves itelf down to the question of whether Cottrell was such an agent as, in law, could bind his principle by his acts and representations.

■ California law in this area is, and has been, chaotic (See 20 California Law Review 1 and 21 California Law Review 91). There is, however, ample authority that a soliciting agent's knowledge may be imputed to his principal, even though a policy provision may seek to prohibit such imputation (See Truck Ins. Exchange v. Industrial Accident Commission, 36 Cal.2d 646, 226 P.2d 583. See also Eagle Indemnity Co. v. Industrial Accident Commission, 92 Cal.App. 2d 222, 206 P.2d 877), and this is especially true where the agent is charged with more than the solicitation of a policy (Walker v. Home Indemnity Co., 145 Cal.App.2d 318, 302 P.2d 361; and Traders & General Insurance Company v. Champ, 9 Cir., 225 F.2d 802).

■ Cottrell was defendant's authorized agent, to accept for financing, proposed projects submitted by the Bowman Construction Company. In this capacity he worked closely with Sims. Cottrell appeared in the dealings with the Buchanans in such a fashion that the Buchanans were entirely justified in believing that Cottrell was primarily a loan agent and secondarily a soliciting insurance agent. It is settled agency law that an agent may reasonably be presumed to have power co-extensive with the business which his principal entrusts to his care, and the agent's powers will not be

narrowed by limitations not communicated to the persons with whom he deals. While the insurance application and the policy itself contained clauses restricting the power of Cottrell to waive policy provisions, Cottrell's consistent representation that no further premium would be due until the loan was granted tends to nullify those restrictions. This situation is accentuated by the fact that the conditions leading to the problem were allowed to, and did, continue from the time the application was signed until the death of Russell Buchanan (Kazanteno v. California-Western States Life Ins. Co., 137 Cal.App.2d 361, 290 P.2d 332).

In a similar situation, a California court has held, that in the absence of fraud, where a party makes an effort to transmit his premium in time, substantial objection should be required to defeat it as a payment when there are acts or conduct on the part of the insurance company which would induce the insured to omit to follow the strict letter of the policy. In its consideration of the question of estoppel as to the manner of payment, that court considered the events which had occurred before the questioned payment, and also indicated quite clearly that it was proper to consider events before the actual issuance of the policy (Huber v. New York Life Ins. Co., 18 Cal.App.2d 269, 63 P.2d 318).

Under the applicable California law it is quite clear that defendant's attempt here to rely on the strict letter of the policy is an untenable position. The policy provided that all payments were to be made to certain specified persons. Cottrell was not included among such persons, yet a portion of the premiums for the first three months was paid to Cottrell before the issuance of the policy, and the remaining portion was paid after the policy was delivered to the Buchanans. Defendant made no objection, nor did it advise the Buchanans in any fashion that payment of premiums to Cottrell was not in compliance with the policy and therefore irregular. To the contrary, defendant unhesitatingly accepted the premiums collected by Cottrell. Such conduct gave the method followed at least tacit approval and lulled the Buchanans into inaction through the false sense of security into which they had been allayed.

Defendant, in its lexicon, has termed the initial payment made by Russell Buchanan an irregular premium and, at the trial, introduced evidence showing that such a premium was differentiated administratively from other types. Information concerning this arrangement was never communicated to the Buchanans. Defendant's uncommunicated scheme of affairs is not binding upon plaintiff, and, therefore, cannot affect the decision here.

Defendant, in fact, had no direct contact with the Buchanans until the lapse notice was sent. Defendant contends that stock mailing pieces were sent to the Buchanans, notifying them that certain premiums were due and payable and giving the address of the local cashier. It appears from the evidence, however, that if these items were sent as contended, they were never received by the Buchanans (Compare Huber v. New York Life Ins. Co., supra).

Cottrell was placed in a position, by defendant, where he appeared to be more than a soliciting agent. Under all the circumstances which existed, the Buchanans had a right to, and did, assume that Cottrell's authority was commensurate with his apparent position of loan agent and, therefore, that he had the authority to condition the payment of premiums on the granting of a construction loan. At no time did defendant disclose to the Buchanans the existence of a local cashier's office or its address. The Buchanans' only contact was certainly not in compliance with the strict terms of the policy insofar as payment of the premiums was concerned.

On the facts of this case, the Court can only conclude that defendant is estopped to assert the defense of nonpayment of premiums, and judgment must, therefore, be for the plaintiff.

At the trial it was assumed by counsel that the defense of failure to prove the

death of the insured was not in issue, and that assumption will be accepted as correct here (See Lincke v. Mutual Benefit Health & Accident Association, 76 Cal.App.2d 222, 172 P.2d 912).

It is, therefore, ordered that plaintiff have judgment against defendant, as prayed for in the complaint. Plaintiff will prepare and lodge with the Clerk findings of fact and conclusions of law, a form of judgment, and all other documents necessary for the disposition of this case, pursuant to the applicable law and rules.